LUCREZIA MINNITTI VIVIANO, PLAINTIFF-APPELLANT, v. CBS, INC., ALLEN BRADLEY, A CORPORATION OF THE STATE OF WISCONSIN, AND JOHN DOE, DEFENDANTS, AND SYBRON, A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-RESPONDENT.

Argued March 5, 1985—Decided January 28, 1986.

*Robert G. Holston* argued the cause for appellant (*Holston and MacDonald*, attorneys; *James D. Donnelly*, on the brief).

*Louis Niedelman* argued the cause for respondent (*Cooper, Perskie, April, Niedelman, Wagenheim & Weiss*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The basic issue on this appeal is whether the cause of action of plaintiff, Lucrezia Viviano, against defendant Sybron is barred because of the expiration of the two-year period of limitations for personal injury actions, *N.J.S.A.* 2A:14–2. The Law Division denied Sybron's motion for summary judgment and granted Viviano's motion to strike the defense of the statute of limitations. In an unreported decision, the Appellate Division reversed and remanded for entry of a judgment dismissing the complaint. One judge dissented, and plaintiff appealed of right. *R.* 2:2–1(a)(2). We reverse.

I

We glean the following facts from the depositions, affidavits, and documents filed by the parties in support of their cross-motions. Because the matter is presented on appeal from the Appellate Division's mandate directing judgment in favor of Sybron, we view the record in the light most favorable for plaintiff, giving her the benefit of all legitimate inferences that may be drawn from the facts. *Millison v. du Pont*, 101 *N.J.* 161, 167 (1985); *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 75 (1954).

Thus viewed, the record reveals that on December 1, 1978, Viviano was injured while operating a record album press at the CBS plant in Pitman, New Jersey. Apparently CBS had assembled the press some twenty years earlier from components provided by various suppliers. At the time of the accident, Viviano, who was twenty years old, had worked at the plant for six weeks. She was working on the night shift when she alerted a CBS mechanic that the machine was malfunctioning. According to Viviano, the press, which was like "a giant waffle iron," was "popping up and down." While Viviano was on her half-hour dinner break, the mechanic adjusted the press. Although the mechanic assured her that he had repaired it, the press malfunctioned and sandwiched her left hand. Because the machine did not have a safety device, Viviano was unable to free her hand until her co-workers released her. In the interim, the press processed her hand. The combination of the 228-pound weight and 350-degree heat destroyed three and one-half of plaintiff's fingers and rendered her remaining finger useless.

Plaintiff retained counsel, and he consulted an expert, who advised, before inspecting the machine, that the absence of ·a safety device constituted a design defect in the machine. Thereafter, on July 2, 1979, plaintiff sued CBS; "JOHN DOE COMPANY, Manufacturer of Record Press Machine;" "JOHN HOE COMPANY, Installer of Record Press Machine;" and "JOHN MOE COMPANY, Distributor of Record Press Ma-

chine." She did not expressly allege a cause of action against any component manufacturer, either by specific identification or through the fictitious-name procedure authorized by Rule 4:26–4.

After filing the complaint, plaintiff obtained a court order permitting her expert to examine the press. Immediately after the accident, however, CBS had removed the timer and placed it in a pile of timers in the maintenance yard. On the date of the inspection, therefore, the press did not have a timer. Nonetheless, CBS showed the expert the press without the timer and similar presses that contained timers.

Plaintiff proceeded with discovery, and on April 7, 1980, deposed Joseph Kroll, the CBS plant manager. Kroll testified, with reference to the press, that CBS had "absolutely no record of that equipment anywhere." During the course of the deposition, however, counsel for CBS agreed to provide plaintiff with a list of component part manufacturers. The list, which was dated June 26, 1980, was served on plaintiff on June 30, 1980. Although the parties disagree about the number of manufacturers listed, they agree that Taylor Instrument Company (Taylor) was among the listed companies.

Upon receipt of the list, plaintiff hired a second expert to determine which of the companies had manufactured the press. As a result of the second expert's investigation, plaintiff abandoned the fictitious identification of defendants and filed an amended complaint on September 2, 1980, naming A & M Tool & Die, Inc. (A & M) as the manufacturer of the press.

On June 2, 1982, plaintiff deposed Samuel Burger, vice-president of CBS, who produced at his deposition an internal CBS memorandum, dated December 4, 1978, that identified the timer on the press as the defective component and further identified Taylor as the manufacturer of the timer. This memorandum had been prepared by the CBS pressroom foreman only three days after plaintiff's accident. Copies had been sent to Kroll,

to the director of employee relations, and to the manufacturing manager of the plant at the time of the accident.

The relevant portion of the memorandum states:

We found a problem on the old Taylor Timers, we are in the process of changing. If the microswitch sticks, the press will reset itself and go back in and through a cycle. I questioned the electricians on a safety device. We are in the process of replacing the Taylor timers with our electronic timers that have an additional safety built in.

CBS justifies its failure to make earlier disclosure by claiming that the memorandum had been misfiled. The plant manager admitted on deposition, however, that he was aware of the report on the date it was prepared.

Even after providing plaintiff's counsel with a copy of the December 4, 1978, memorandum, CBS delivered answers to interrogatories in which it continued to quibble about the happening of the accident. After plaintiff filed numerous motions to compel, CBS finally answered the interrogatories by denying that it knew how the accident happened. In response to other interrogatories seeking to ascertain the identity of the distributor of the press or of its component parts, CBS averred that the names could not be ascertained at that time. CBS also stated that its electrician and maintenance mechanic "checked the press operation for electrical and mechanical failures immediately following the accident and could find nothing wrong with the press nor could they make the press re-cycle on its own. Other than the above, there is no more specific information which is known by this defendant."

Either intentionally or unintentionally, CBS misled plaintiff about the cause of the accident and then compounded the deception with undue delay. For example, at one time, CBS agreed to the entry of an order allowing plaintiff to file a sixth amended complaint against Sybron, which had acquired Taylor before the accident in October 1978. Later, however, CBS withdrew its consent, thereby delaying the filing of the amended complaint. On July 16, 1982, approximately one month after CBS produced the memorandum at Burger's deposition, plain-

tiff obtained an order permitting the filing of the sixth amended complaint, which included Sybron as a defendant. The complaint also reinstated the "John Doe" designation, which plaintiff had eliminated after Kroll had denied the existence of any CBS records pertaining to the press.

Sybron filed a motion for summary judgment, asserting that plaintiff should have discovered her cause of action against it on June 26, 1980, the date of the CBS list that named the component part manufacturers. Because plaintiff did not file the sixth amended complaint until July 30, 1982, two years and one month after the date of this list, Sybron claimed that plaintiff's action was barred by the statute of limitations. Viviano filed a cross-motion to strike the statute of limitations as a defense.

In denying Sybron's motion and granting Viviano's cross-motion, the trial court relied on the discovery rule. Specifically, the court found that Viviano discovered her cause of action on June 2, 1982, when CBS relinquished its internal memorandum, and that she filed a sixth amended complaint within two years of that date.

In reversing, the Appellate Division determined that Viviano knew of her cause of action on December 1, 1978, when the malfunction of the press injured her hand. This determination led the court to conclude that she was not entitled to the benefit of the discovery rule.

The court observed further that in her initial complaint plaintiff had properly resorted to the fictitious-name practice authorized by Rule 4:26-4 and that the designation "John Doe Company, Manufacturer of Record Press Machine," was sufficient to include Sybron. When plaintiff added A & M as a defendant, however, she dropped the "John Doe" designation from subsequent amended complaints until the sixth amended complaint. By specifying A & M as the true name of the fictitious defendant, plaintiff lost the right to add Sybron as a defendant beyond the period of the statute of limitations. The

court concluded that plaintiff's cause of action accrued on December 1, 1978, the date of her injury, and that the sixth amended complaint, which was not filed within two years of that date, was time-barred.

The dissenting judge found that either the discovery rule or the fictitious-party practice under Rule 4:26–4 was sufficient to preserve plaintiff's claim against Sybron.

Although we agree with the Appellate Division that plaintiff is not entitled to the benefit of the discovery rule, we find that the interests of justice require that we relax Rule 4:26–4 so that the sixth amended complaint asserting a cause of action against Sybron relates back to the original complaint.

## II

Under *N.J.S.A.* 2A:14–2, a personal injury action must be commenced "within 2 years next after the cause of any such action shall have accrued." To relieve the hardship that might otherwise ensue from the mechanical application of a statute of limitations, courts have devised an equitable principle known as the "discovery rule." Under that rule, a cause of action does not accrue "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Lopez v. Swyer*, 62 *N.J.* 267, 272 (1973). Ordinarily, a cause of action accrues when the plaintiff knows of his or her injuries and of facts sufficient to attribute those injuries to the fault of another. *Lynch v. Rubacky*, 85 *N.J.* 65, 73–75 (1981); *see also Burd v. New Jersey Tel. Co.*, 76 *N.J.* 284, 291 (1978) (discovery principle modified conventional limitations rule only to extent of postponing commencement of accrual of cause of action until plaintiff learns, or reasonably should learn, existence of state of facts that may equate in law with cause of action).

In the present case, plaintiff knew on December 1, 1978, that the malfunction of the press injured her hand. Although she did not know the identity of the wrongdoer or of the specific

part that caused the machine to malfunction, she was aware that the fault of another had caused her to suffer personal injuries. As she acknowledged on deposition, the press "did something that should have been done only when you press the two mushroom-[type] red buttons * * *. That never happens. The only way that press closes * * * [is] when you hit the buttons. Nothing else is supposed to happen." From the moment the accident occurred, plaintiff knew of facts that equated with a cause of action. *Burd v. New Jersey Tel. Co., supra,* 76 *N.J.* at 291. Thus, as the Appellant Division found, plaintiff is not entitled to the protection of the discovery rule, and the statute of limitations began to run on the date of her injury. Plaintiff's lack of recourse to the discovery rule, however, need not preclude relief under Rule 4:26-4.

## III

■ By suspending the statute of limitations when the plaintiff is unaware of his or her injuries or of the culpability of another, the discovery rule serves a different purpose from the fictitious-party practice under Rule 4:26-4, which suspends the statute when the plaintiff is unaware of the true identity of the defendant. *Lawrence v. Bauer Publishing & Printing Ltd.,* 78 *N.J.* 371, 375-76 (1979) (Pashman, J., concurring). The fictitious-name practice and the discovery rule reflect our awareness that litigation can be time-consuming, expensive, and uncertain. Both the practice and the rule emanate from our attempt to balance the defendant's interest in repose with the plaintiff's interest in a just determination of his or her claim. The need to submit claims promptly to judicial management must be tempered by the policy favoring the resolution of claims on their merits. Nowhere is the dynamics of that process more apparent than in industrial-accident cases.

As the present case illustrates, the injured worker generally knows that he or she has been injured and that the injury is

attributable to the act of another. Consequently, it behooves the worker to consult counsel promptly. It then becomes incumbent on counsel to investigate the matter, retain experts if required, and institute suit when the facts suggest a claim is well-founded. If counsel is uncertain about the identity of the culpable party, he or she may resort to the fictitious-name procedure in Rule 4:26–4, which provides:

> In any action, irrespective of the amount in controversy, other than an action governed by R. 4:4–5 (affecting specific property or a res), if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. Plaintiff shall on motion, prior to judgment, amend his complaint to state defendant's true name, such motion to be accompanied by his affidavit stating the manner in which he obtained that information.

This Rule assumes added significance in a case in which a worker is injured while operating an industrial machine assembled from a multiplicity of parts. The cause of the accident can be the machine or any one or more of its myriad components. Such an accident can give rise to a suit based on design defect, malfunction, or on some other basis, such as negligent maintenance or repair.

We have construed Rule 4:26–4 to permit a plaintiff who institutes a timely action against a fictitious defendant to amend the complaint after the expiration of the statute of limitations to identify the true defendant. In so construing the Rule, we recognized that an amended complaint identifying the defendant by its true name relates back to the time of filing of the original complaint, thereby permitting the plaintiff to maintain an action that, but for the fictitious-party practice, would be time-barred. *Farrell v. Votator Div. of Chemetron Corp.*, 62 *N.J.* 111, 120–23 (1973).

Like the present case, *Farrell* arose in the context of an industrial accident. While plaintiff was cleaning a machine, his pant leg was caught in the teeth of an axle, and he suffered personal injuries. Within the two-year period of limitations, plaintiff sued two specifically-identified defendants and a ficti-

tious defendant, who was alleged to be the assembler, supplier, or seller of the machine. Beyond the period of limitations, plaintiff learned through discovery that the name "Chemetron Corporation" appeared on the base of the machine and that the machine had been built by Chemetron's Votator Division (Votator). Pursuant to a court order, plaintiff amended the complaint to identify Votator as the defendant. Thereafter, the Law Division granted Votator's summary judgment dismissing the complaint as barred by the statute of limitations. In an unreported decision, the Appellate Division reversed the summary judgment, pointing out that "the amendment to the complaint substituting Votator Division of Chemetron Corporation for John Doe related back to the original complaint which was filed before the expiration of the statute of limitations."

In affirming, we noted that the more specific identification of the fictitiously-designated defendant did not introduce a new party or a new cause of action. 62 *N.J.* at 120. We concluded:

> Justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim; and the absence of prejudice, reliance or unjustifiable delay, strengthens the conclusion that this may fairly be done in the matter at hand 'without any undue impairment of the two-year limitation or the considerations of repose which underlie it'. (Citing *Fernandi v. Strully*, 35 *N.J.* 434, 451 (1961).) [*Id.* at 122–23.]

Consequently, we held that the fictitious-name practice provided by Rule 4:26–4 saved the amended complaint from the bar of the statute of limitations.

A plaintiff generally exhausts the protection of Rule 4:26–4, however, once he or she substitutes a specific defendant for the fictitious defendant. *Miletta v. Doe*, 158 *N.J.Super.* 550, 555–56 (Law Div.1978). Thus, in *Miletta* the court dismissed a third amended complaint that sought, after the expiration of the period of limitations, to add additional defendants in a wrongful death action. The plaintiff brought a timely "John Doe" action against the manufacturers and distributors of asbestos products. Beyond the period of the statute, she amended the complaint to drop the "John Doe" designation and to add certain specific defendants, one of which filed a third-party

complaint against two third-party defendants. Plaintiff thereupon filed the third amended complaint to assert direct claims against the third-party defendants. The court ruled that by eliminating the designation of a fictitious defendant, plaintiff lost the ability to assert claims directly against the third-party defendants.

In the present case, the original complaint designated as a fictitious defendant: "JOHN DOE COMPANY, Manufacturer of Record Press Machine." If plaintiff had retained the "John Doe" designation in the complaint throughout its various amendments, she could have added Sybron as a party defendant after the expiration of the statute of limitations. In reliance on the list of manufacturers provided by CBS and that corporation's denial of records pertaining to the machine, however, plaintiff dropped the "John Doe" designation and added A & M as the manufacturer, distributor, and installer of the press. A strict application of Rule 4:26–4, therefore, would deprive plaintiff of the benefit of the Rule, with the result that the sixth amended complaint would not relate back to the original complaint.

Although we have not previously considered whether to relax Rule 4:26–4 when the plaintiff has dropped the "John Doe" designation and subsequently sought to add a defendant after the expiration of the statute of limitations, occasionally we have relaxed other Rules of procedure when rigid application of those Rules would time bar an otherwise meritorious claim. *See, e.g., Devlin v. Surgent,* 18 *N.J.* 148, 153–54 (1955); *Sattelberger v. Telep,* 14 *N.J.* 353, 362–63 (1954). Indeed, Rule 1:1–2 mandates that "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." Compliance with the Rules of Practice is essential for an orderly legal system, but our goal is not so much rigid compliance with the letter of the Rules as it is the attainment of substantial justice. The Rules of Practice are not an end unto themselves,

but a means of serving the ends of justice. *See Sattelberger v. Telep, supra,* 14 *N.J.* at 363.

Consistent with that goal, the Appellate Division in a comparable case relaxed Rule 4:9–3, which governs the relation back of amendments, to sustain an amended complaint adding a new defendant after the expiration of the period of limitations. *Aruta v. Keller,* 134 *N.J.Super.* 522 (1975). In *Aruta,* a workman who was injured by a fabricating machine sued a manufacturing company and one of two brothers with similar first and last names. During discovery, but beyond the period of limitations, the plaintiff learned that the machine had been designed and sold by the second brother and his manufacturing company. Accordingly, the plaintiff amended the complaint to substitute that brother and his company as the defendants. The Law Division granted summary judgment dismissing the amended complaint on the theory that the amendment added new defendants beyond the period of limitations. In reversing and remanding, the Appellate Division acknowledged that because the new defendants had not received notice of the action before the expiration of the statute, the plaintiff had not satisfied the literal requirements of Rule 4:9–3. Nonetheless, the court perceived no practical difference between the institution of an action against a fictitious defendant under Rule 4:26–4 and the case before it, in which the plaintiff, in good faith, had sued one brother and his business organization rather than the other. Consequently, the court remanded the matter to the Law Division for a hearing in which the trial court was to balance the plaintiff's good faith, reasonableness, and diligence against the defendants' claim of prejudice from late notice. *Id.* at 529–30.

In other cases, the Appellate Division and the Law Division have employed a liberal construction of Rule 4:9–3 to permit the joinder of additional parties after the expiration of the period of limitations. *See Smelkinson v. Ethel & Mac Corp.,* 178 *N.J. Super.* 465 (App.Div.1981) (while plaintiff was a business invitee at recreational facility, she was struck by car driven by

third party; she timely sued the facility and operator of the car for medical expenses, but failed to join operator's personal injury protection carrier; held, plaintiff could join the carrier beyond the statutory period); *Bradley v. Powles*, 90 *N.J.Super.* 550 (App.Div.), certif. denied, 47 *N.J.* 422 (1966) (plaintiff who was injured by car owned by Harry (father) and driven by Henry (son) designated Harry as the defendant under impression that he was also the operator; held, after expiration of statute of limitations, plaintiff may amend complaint to substitute Henry for Harry); *Scolaro v. Marlatt*, 193 *N.J.Super.* 452 (Law Div.1983) (after expiration of statute of limitations, wife who had filed timely action for personal injuries was allowed to add husband's claim for loss of consortium); *cf. Wimmer v. Coombs*, 198 *N.J.Super.* 184 (App.Div.1985) (after expiration of statute of limitations, wife may amend complaint to assert her direct claim for personal injuries arising out of an automobile accident, when husband had instituted a timely action for personal injuries arising out of the same accident and she had joined to assert a claim for loss of consortium). *But see Townsend v. Great Adventure*, 178 *N.J.Super.* 508 (App.Div. 1981) (plaintiff struck by car operated by co-employee with learner's permit against whom plaintiff brought timely action; held, after expiration of statute of limitations, plaintiff may not join licensed driver who accompanied operator).

Although Rule 4:9–3 and Rule 4:26–4 permit an amended pleading to relate back to an earlier one, one difference between the two Rules is that the fictitious-party practice authorized by Rule 4:26–4 expressly contemplates the filing of an amended complaint. By comparison, Rule 4:9–3 permits the addition of a new claim or a new party when the original complaint did not contemplate the need for such an amendment. In its present form, Rule 4:9–3 provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may,

upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Therefore, with respect to an amendment changing the defendant against whom the claim is asserted, a plaintiff should show that (1) the claim asserted in the amended complaint arose out of the conduct, transaction, or occurrence alleged or sought to be alleged in the original complaint; (2) the new defendant had sufficient notice of the institution of the action not to be prejudiced in maintaining his or her defense; and (3) the new defendant knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her. *Smelkinson v. Ethel & Mac Corp., supra,* 178 *N.J.Super.* at 471. These conditions, however, are not an express prerequisite to recourse to Rule 4:26–4.

## IV

When plaintiff started suit, seven months after the accident, her attorney was understandably uncertain of the identity of the culpable party or the precise cause of her injury. Consequently, he named as fictitious parties the manufacturer, installer, distributor, and transporter of the press. The original complaint described generally the happening of the accident and, based on the report of plaintiff's original expert, referred to the absence of a safety device on the press as the cause of the accident. Additionally, the complaint alleged: "Said machine was so manufactured so as to allow the top unit of the machine to close upon the bottom unit without the operator performing some task with both hands before said upper unit would close."

In more general language, the complaint alleged further: "Defendant, JOHN DOE COMPANY, negligently, carelessly and recklessly designed, constructed, manufactured and tested

the Record Press Machine purchased and used by the Columbia Broadcasting System, Columbia Records Division." Construing the complaint liberally in the interest of justice, as Rule 4:5–7 mandates, we find that it alleges a cause of action against the manufacturer of a defective component, such as the timer.

We recognize that the designation of the fictitious defendant in the complaint could have been more precisely drawn to set forth that it also applied to the manufacturer of any components of the press. Nonetheless, we agree with the Appellate Division that the designation in the complaint would have been sufficient, had it been retained, to justify the subsequent specific identification of Sybron as a defendant in the sixth amended complaint. *See Jarusewicz v. Johns-Manville Products Corp.,* 188 *N.J.Super.* 638, 647–48 (Law Div.1983) (after expiration of statute of limitations, plaintiff permitted to add as defendants various asbestos manufacturers and suppliers, when original complaint included designation of "John Does" in caption and alleged causes of action in negligence, warranty, strict liability, and misrepresentation against all "manufacturers, suppliers and/or distributors of the asbestos, asbestos products and/or materials" used by plaintiffs).

Our decision is distinguishable from *Lawrence v. Bauer Publishing & Printing Ltd., supra,* 78 *N.J.* 371, in which the plaintiffs sued a newspaper, its president, its editor, a reporter, and "John Doe," described in the complaint as "the composer and writer" of an allegedly libelous story. Although they knew the story originated with an outside source, plaintiffs did not designate the source as a separate defendant in the original complaint either by his true name or a fictitious name. Beyond the one-year period of limitations pertinent to libel actions, see *N.J.S.A.* 2A:14–3, plaintiffs amended the complaint to add the source as a defendant. The Law Division entered summary judgment dismissing the amended complaint, 143 *N.J.Super.* 387 (1976), and the Appellate Division reversed over a dissent, 154 *N.J.Super.* 271 (1977). We reversed substantially for the reasons set forth in the dissenting opinion, which stated that

before the expiration of the statute of limitations, plaintiffs could have resorted to Rule 4:26-4 to identify the source as a fictitious defendant, 154 *N.J.Super.* at 280. We declined to permit the plaintiffs to add the source as a defendant after the running of the period of the statute because the source was not subsumed within the fictitious-party designation. In the present case, however, the designation of "JOHN DOE COMPANY, Manufacturer of Record Press Machine" extends to Sybron as the manufacturer of a defective component.

For the future, however, a plaintiff who is injured in an industrial accident should at least name as fictitious parties, if their true identities are unknown, those entities that designed, manufactured, and maintained the subject machine and its component parts. Furthermore, the plaintiff should allege in the body of the complaint, in general terms if necessary, his or her causes of action against those entities.

■ The problem in the present case is that plaintiff's attorney discontinued the fictitious designation of the manufacturer in the amendments filed between the original and the sixth amended complaints. Hence, we must determine whether that failure compels dismissal of the plaintiff's complaint or whether the interests of justice point toward the relaxation of Rule 4:26-4, thereby permitting an adjudication on the merits.

The appropriate determination follows from an analysis of the relevant facts. On April 7, 1980, before the complaint was amended to delete the "John Doe" designation, the CBS plant manager, Kroll, testified on deposition that CBS had no record of the press. We need not dwell on his motivation for so testifying; for our purposes, it suffices that the testimony was incorrect and misleading. Four months later, still ignorant of the internal CBS memo that inculpated the Taylor timer, plaintiff eliminated the designation of fictitious defendants and named A & M as the manufacturer and installer of the press. While the attorney struggled through the discovery and pleading process, the two-year period of limitations expired on De-

cember 1, 1980. Finally, on June 2, 1982, CBS yielded the memorandum; and in July 1982, plaintiff amended the complaint to join Sybron. The insidious effect of the failure of CBS to make timely disclosure of the memorandum is apparent. Shortly after CBS denied possession of records pertaining to the press, plaintiff's counsel dropped the "John Doe" designation. Immediately after CBS unearthed the memorandum, plaintiff sued Sybron. It is fair to conclude that if CBS had provided plaintiff with a copy of the memorandum in April 1980, plaintiff would have joined Sybron well within the period of limitations.

By suppressing the December 4, 1978, memorandum and removing the timer, CBS led plaintiff and her counsel down a primrose path. We find that the elimination of the fictitious-party designation and the specification of A & M as the manufacturer of the defective part are attributable not so much to the lack of diligence of plaintiff's counsel as to the frustration of discovery by CBS. Perhaps plaintiff's attorney could have done more. We are satisfied that he did enough, and that plaintiff should not be deprived of her day in court because an adverse party failed to comply with the rules for discovery. Under the singular circumstances of this case, which include Sybron's acknowledgment that it has not been prejudiced, justice requires that we invoke Rule 1:1–2 and relax Rule 4:26–4 so that the sixth amended complaint relates back to the original complaint. *See Avdel Corp. v. Mecure*, 58 *N.J.* 264, 273–74 (1971). To do otherwise would permit concealment and technicality to triumph over the interests of justice.

We reverse the judgment of the Appellate Division and reinstate the judgment of the Law Division, to which we remand the matter for further proceedings.

*For reversal, reinstatement and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.