214 N.J. Super. 538 (1986)
520 A.2d 773
VIRGINIA HERNANDEZ, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF REINALDO HERNANDEZ, PLAINTIFF-APPELLANT,
v.
ST. JAMES HOSPITAL, LAWRENCE DALGLISH, M.D., MICHAEL BERCIK, M.D., ET AL., DEFENDANTS, AND N.K. MITTRA, M.D., TERESITA BOBILA BRILLANTES, M.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1986.
Decided December 29, 1986.
*539 Before Judges PRESSLER, GAULKIN and ASHBEY.
John M. Blume argued the cause for appellant (Blume, Vazquez, Goldfaden, Berkowitz, Oliveras & Donnelly, attorneys; Carol L. Loughrey, on the brief).
Jay Scott MacNeill argued the cause for respondent Mittra (McDonough, Murray & Korn, attorneys; Jay Scott MacNeill, of counsel; Jonathan E. Drill and James R. Korn, on the brief).
Susan R. Rubright argued the cause for respondent Brillantes (Francis & Berry, attorneys; Hugh P. Francis, of *540 counsel; Susan R. Rubright and Sean P. Buckley, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Virginia Hernandez, general administratrix and administratrix ad prosequendum of the estate of Reinaldo Hernandez, appeals on leave granted from a summary judgment dismissing, on limitations grounds, her wrongful death cause of action against defendants N.K. Mittra and Teresita Brillantes and directing, in respect of her survivorship action against those defendants, that a preliminary Lopez hearing[1] be held. We reverse since we are satisfied that plaintiff's initial resort to the fictitious-defendant practice under R. 4:26-4 was proper, that her motion to amend her complaint to substitute the names of these defendants for John Doe designations was timely under the circumstances and, hence, that there is no limitations impediment to her proceeding against these defendants on both the wrongful death and the survivorship counts of her complaint.
Plaintiff is the widow of Reinaldo Hernandez who was brought to the emergency room of St. James Hospital in Newark just after midnight on October 9, 1982. He came under the immediate care of defendants Lawrence Dalglish, the emergency room physician and Michael Bercik, an orthopedist, who ascertained that Hernandez had been struck with a baseball bat on his arms and back. They arranged for a consultation with defendant Mittra, a general surgeon, who examined Hernandez at 2:00 a.m., noted that chest and abdominal injuries had to be ruled out, and recommended the administration of various tests in the morning. During the balance of the night, *541 Hernandez's condition rapidly deteriorated, and Dr. Mittra, who was reached by telephone, prescribed various medications and procedures. Dr. Brillantes, who was apparently on duty that night, both administered Mittra's telephone orders and took other medical steps in response to Hernandez's worsening situation. She notified Dr. Mittra at 6:15 a.m. that Hernandez had been transferred to an intensive care unit. Dr. Mittra attended Hernandez at 7:00 a.m., performing an abdominal tap which established the presence of blood in the abdominal cavity. He continued to work on Hernandez until 8:30 a.m. when he then had him taken to the operating room for performance of an exploratory laparotomy. The surgery showed a laceration of the spleen attended by massive intra-abdominal bleeding. Hernandez died at 9:55 a.m.
This complaint was filed on October 2, 1984, just one week before the expiration of the statute of limitations. Named as defendants were the St. James Hospital, Dalglish, Bercik and eleven fictitious defendants. Six of the fictitious defendants were jointly described as "physicians employed by, or on the staff of" the hospital who "were negligent and careless in the diagnosis of plaintiff's decedent's condition and in the treatment rendered and did thereby deviate from accepted medical standards...." Five months later, in March 1985, plaintiff moved to amend the complaint in order to name Dr. Mittra as a defendant and, in June 1985, she moved to amend to name Dr. Brillantes as a defendant. Each of these motions was granted, and each of the defendants answered, Mittra on July 24, 1985 and Brillantes on October 25, 1985. During the year-and-a-half following the filing of the original complaint, the matter proceeded through an active pleading stage involving the filing of numerous cross-claims by the various defendants. Extensive discovery ensued as well, in large part reflected by the filing of numerous discovery motions. In March 1986 defendants Mittra and Brillantes each filed a motion for summary judgment, claiming that the action was barred by reason of the two-year statute of limitations, N.J.S.A. 2A:14-2. We granted leave to *542 appeal from the order granting those motions in respect of the wrongful death claim and directing a threshold Lopez hearing on the survivorship claim.
At the outset, we express our agreement with the trial judge's conclusion that the wrongful death action, not being an accrual cause of action, is not subject to the discovery rule of deferral of the accrual of the cause. See Presslaff v. Robins, 168 N.J. Super. 543 (App.Div. 1979). The issue then, as the trial judge correctly perceived it, was not whether plaintiff first knew or should have known of her cause of action after the expiration of two years from the date of her husband's death but rather whether she properly relied upon and resorted to the fictitious-defendant rule when she filed her complaint within that time period. We disagree with the trial judge's conclusion that she did not.[2]
It is important to distinguish, on the one hand, between the discovery rule by which the accrual date of a cause of action is deferred and, on the other, the fictitious-defendant rule. This is so since the discovery rule clearly can be of no avail here to save the wrongful death claim. The fictitious-defendant rule can, however, since it is well settled that the substitution of an identified defendant for a fictitious defendant after the statute of limitations has run may relate back to the date of the filing of the original complaint. See Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 120-123 (1973). Viviano v. CBS, Inc., 101 N.J. 538, 546-548 (1986), makes clear the distinction between these two mechanisms, explaining that *543 the discovery rule applies when a party, by the exercise of reasonable diligence, does not know he has a cause of action until some time after the infliction of the injury, but that the fictitious-defendant rule applies when a party knows or has reason to know his injury has been negligently inflicted but cannot, at the time of injury or within a reasonable time thereafter, ascertain the identity of the wrongdoer. We are satisfied that at the time this complaint was originally filed, plaintiff was chargeable with knowledge of her cause of action and had indeed acted on that knowledge. What she did not then know was the identity of each person whose negligence contributed to causing the injury and the precise nature of each such contributing act of negligence. Following what we believe the import of Viviano to be, we conclude that the circumstances were thus appropriate here for invocation of R. 4:26-4, that the designation of the fictitious defendants required by that rule was minimally adequate and that, in the absence of any perceivable undue prejudice to these two defendants, the relation-back policy of the rule was fully applicable.
It appears to us that the liberal interpretation accorded to R. 4:26-4 by the Supreme Court in Viviano was at least in part attributable to its recognition of the special problems which a plaintiff ordinarily encounters in properly framing a personal injury complaint based on an industrial accident arising out of alleged product defect, such as was there involved. As the Court thus pointed out
the injured worker generally knows that he or she has been injured and that the injury is attributable to the act of another. Consequently, it behooves the worker to consult counsel promptly. It then becomes incumbent on counsel to investigate the matter, retain experts if required, and institute suit when the facts suggest a claim is well-founded. [101 N.J. at 547-548]
But, as the court went on to explain, successful conduct of the critical preliminary investigatory and evaluation functions is significantly impeded
in a case in which a worker is injured while operating an industrial machine assembled from a multiplicity of parts. The cause of the accident can be the machine or any one or more of its myriad components. Such an accident can *544 give rise to a suit based on design defect, malfunction, or on some other basis, such as negligent maintenance or repair. [101 N.J. at 548]
It is in such situations, in which these complexities make the identity of the culpable party uncertain, that resort to the fictious-name procedure of R. 4:26-4 is both appropriate and necessary to assure the survival of a meritorious cause of action.
In terms of the special problems encountered in investigation, evaluation, and procurement of preliminary expert opinion, we find clear parallels between claims of personal injury caused by a multi-component industrial machine and claims of personal injury suffered by a hospital patient who is attended by numerous professionals, paraprofessionals, and even lay staff who are basically unknown to him. Thus, a hospital patient or his survivors may well know that something went wrong which should not have gone wrong during the hospitalization period. They may also have a reasonably good idea of what in fact went wrong. Pinpointing the precise negligent act and the person immediately responsible for it may, however, require extensive and painstaking investigation in which the objects of the investigation are uncooperative, those in control of necessary records equally unforthcoming, and the actual facts of culpability and the identity of all the culpable persons perhaps unascertainable at all without the discovery techniques typically available only after litigation has commenced. We are persuaded that these predicates of Viviano, supra, are pertinent here. It is plaintiff's uncontradicted assertion that the hospital records were sent to counsel piecemeal and that they named, in total, at least twenty persons who had some part in Mr. Hernandez's care in the short period of time between his admission and his death. The hospital records constitute part of this record, and it is our own observation that they are, in large part, illegible and that many of the notes are signed by way of unidentified initials or completely illegible signature.
We make one final observation. Since we have determined that R. 4:26-4 applies and that the two amendments of the *545 original complaint relate back to the date of the original complaint, there is no need for a Lopez hearing on the survivorship claim. The effect of our holding respecting R. 4:26-4 is that all counts of the complaint as against these two defendants are timely as measured by N.J.S.A. 2A:14-2.
The summary judgment appealed from is reversed and the cause remanded for further proceedings.
NOTES
[1] See Lopez v. Swyer, 62 N.J. 267 (1973), requiring, where the so-called discovery rule of accrual is involved, that a threshold hearing be held on the question of when the plaintiff knew or should have known of the existence of the cause of action.
[2] We note that when the second amended complaint naming Dr. Brillantes was filed, one of the fictitiously named defendants was correspondingly eliminated. There was no such elimination of a fictitiously named defendant when the first amended complaint naming Dr. Mittra was filed. The trial judge, however, was of the view that plaintiff nevertheless had intended to resort to the fictitious-defendant rule and that her failure to eliminate one of the fictitious defendants in favor of Dr. Mittra was inadvertent. We are satisfied that this was so and find no technical impediment on this basis to the employment of the fictitious-defendant rule.