**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2490-24

ADAM GREY LECUYER,

     Plaintiff-Appellant,

v.

JIM CHRISTALDI & SON
BUILDERS, INC.,[1]

     Defendant,

and

1 DOLPHIN, LLC,[2] and
REUTER CONSTRUCTION, INC.,

     Defendants-Respondents.

_____

     Submitted April 22, 2026 – Decided May 5, 2026

     Before Judges Mayer and Vanek.

---

[1]  The claims against Jim Christaldi & Son Builders, Inc. were dismissed in a September 24, 2024 stipulation of dismissal without prejudice.  This defendant is not participating on appeal.

[2]  The claims against 1 Dolphin, LLC were dismissed with prejudice on April 16, 2025.  This defendant is not participating on appeal.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0116-23.

Pender & Strickland, LLC, attorneys for appellant (Ted C. Strickland, Jr., on the brief).

Reilly McDevitt & Henrich, PC, attorneys for respondent Reuter Construction, Inc. (Frederick E. Blakelock, on the brief).

PER CURIAM

Plaintiff Adam Grey LeCuyer appeals from a February 24, 2025 order granting summary judgment in favor of defendant Reuter Construction, Inc. (Reuter) and a March 28, 2025 order denying reconsideration of the February order. We affirm both orders.

Defendant 1 Dolphin, LLC owned property located at the corner of South Iroquois Avenue and Dolphin Drive in Margate, New Jersey (Property). In August 2020, 1 Dolphin LLC hired Reuter to demolish an existing home on the Property. The Property has a sidewalk along South Iroquois Avenue but not Dolphin Drive. Reuter began demolition work on November 10, 2020, and completed the work six days later.

On or about January 25, 2021, LeCuyer allegedly "tripped over a hole in the sidewalk" on South Iroquois Avenue adjacent to the Property. LeCuyer

2

believed construction work at the Property damaged the sidewalk, causing him to trip and fall.

After he fell, LeCuyer took a photograph of the damaged sidewalk. The photograph did not depict any spray paint or other markings indicating damage to the sidewalk.

According to Reuter, its demolition equipment never accessed the Property from South Iroquois Avenue. Reuter maintained it did not damage the sidewalk where LeCuyer allegedly tripped.

Reuter's president, Jonathan Hansen, explained there was no damage to the sidewalk when Reuter completed demolition work at the Property. According to Hansen, if Reuter damaged "a sidewalk in the course of a demolition project [it was standard procedure] to spray paint the area of the cracks/damage . . . so that the owner of the property could identify the area that required repair."

Hansen stated the sidewalk shown in LeCuyer's photograph did not reflect the condition of the sidewalk when Reuter left the Property. 1 Dolphin, LLC averred it inspected the Property between November 16 and 20, 2020, and there was no damage to the sidewalk.

A-2490-24

At the time of LeCuyer's alleged fall, the Property displayed a wood sign with the name of a custom home builder, "Jim Christaldi & Son." The sign included a telephone number.

Hansen testified at his deposition that Reuter's demolition equipment was "clearly marked with the name '[Reuter],' such that anyone who saw the trucks or other equipment could identify the owner of the equipment as Reuter." LeCuyer admits he "was aware that Reuter had performed work . . . in the vicinity of [the Property]," but claims he "was not aware that Reuter had performed work at [the Property]."

On January 20, 2023, LeCuyer filed a personal injury action against defendant Jim Christaldi & Son Builders, Inc. (Christaldi) and several fictitious defendants. LeCuyer alleged defendants negligently (1) "maintain[ed] a dangerous condition which was negligently created and/or allowed to remain"; (2) "[f]ail[ed] to inspect the area where" he fell; (3) "fail[ed] to have proper lighting, signals or warnings relative to the dangerous condition" causing him to fall; and (4) "fail[ed] to maintain the area in question in a safe condition." As a result of defendants' negligence, LeCuyer claimed he "suffered injuries requiring medical treatment," and incurred economic losses due to his pain and

A-2490-24

suffering. Two weeks later, LeCuyer amended his complaint to name 1 Dolphin, LLC as a defendant.

On April 17, 2023, Christaldi informed LeCuyer that Reuter performed demolition work at the Property. Christaldi explained it did no work at the Property until months after LeCuyer's alleged fall. According to Christaldi, by the time it installed the sign on the Property, "the prior house had already been demolished, the site cleared, and a wooden barrier fence was erected around the vacant property." Christaldi further told LeCuyer that it did not hire Reuter and did not perform any work at the Property until June 2021. Christaldi believed 1 Dolphin, LLC retained Reuter.

On June 14, 2023, LeCuyer filed a second amended complaint naming Reuter as a defendant in place of a fictitious party defendant. At that time, defendants had not filed answers, and no discovery had been exchanged.

Reuter answered the second amended complaint, denying LeCuyer's allegations and asserting several affirmative defenses. One of the affirmative defenses asserted LeCuyer's claims were barred by the statute of limitations. About a month later, Christaldi and 1 Dolphin LLC filed answers denying LeCuyer's claims.

A-2490-24

The parties engaged in discovery and took depositions. During his deposition, Hansen stated Reuter obtained permits from Margate to perform demolition work at the Property. Hansen also testified there was no sidewalk damage before or after Reuter's demolition work. While Hansen conceded Reuter's equipment could cause damage to a sidewalk, he denied any machines traversed the sidewalk where LeCuyer claimed to have fallen. According to Hansen, Reuter first learned of LeCuyer's allegations upon being served with the June 14, 2023 second amended complaint.

After the close of discovery, Reuter moved for summary judgment. LeCuyer opposed the motion. The judge heard counsels' arguments on February 24, 2025.

The judge granted Reuter's motion. The judge agreed LeCuyer's causes of action arose from the same incident for purposes of relating back under Rule 4:9-3. The judge explained:

> A defendant who has timely notice of the pendency of an action cannot reasonably object to the late assertion against that defendant provided he is reasonably chargeable with the knowledge that those other claims would have been timely asserted against him but for [p]laintiff's error or lack of information and the late assertion does not prejudice [d]efendant in maintaining its defense.

A-2490-24

In considering Reuter's statute of limitations defense, the judge stated the issue was "whether [LeCuyer's] amendment [wa]s a new defendant being added or just correct[ed] the name of the defendant in []his original complaint." If Reuter was a new defendant, the judge explained LeCuyer had to show Reuter "had notice of the action prior to the running of the [s]tatute of [l]imitations and that Reuter would not be prejudiced in maintaining [a] defense on the merits and knew or should have known, but for an error of identification[,] the action would have been brought against Reuter."

The judge held "Reuter [wa]s a new party with a distinct and separate legal identity from any other named defendant." Therefore, the judge explained that "allowing [LeCuyer]'s second amended complaint to relate back to the filing of [his] original complaint would affect Reuter's substantial rights" unless "Reuter had notice of the institution of [LeCuyer's] action." The judge found LeCuyer failed to establish "proof of such notice."

The judge rejected LeCuyer's reliance on the discovery rule in opposition to summary judgment. In explaining the discovery rule, the judge stated: "[A] cause of action will be held not to accrue until the injured party discovers or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." The judge concluded the discovery

7

A-2490-24

rule did not apply because LeCuyer "was aware he suffered an injury at the time of the fall," "was aware of the causal connection between his injury and the broken sidewalk," and "was aware that the wrongful conduct occurred." The judge found "[a] simple call to Christaldi would have yielded the identity of the additional [d]efendants well before the running of the [s]tatute of [l]imitations" or, alternatively, LeCuyer could have called the municipality and requested building permits for the property during the relevant time period. Thus, the judge found the discovery rule was inapplicable.

The judge then addressed LeCuyer's argument regarding the fictitious pleading rule allowing for process to issue against a fictitious defendant "if a defendant's true name is unknown," provided there is "an appropriate description sufficient for identification." R. 4:26-4. The judge explained the fictitious pleading rule "is used properly" when an "amended complaint identifying the defendant by its true name relates back to the time of the filing of the original complaint." For the rule to apply, the judge stated a plaintiff must "act with due diligence in attempting to identify and sue the responsible parties within the [s]tatute of [l]imitations."

Applying well-settled law, the judge found LeCuyer failed to exercise the required due diligence in identifying Reuter as a defendant within the period of

limitations for his personal injury action. Thus, the judge found LeCuyer's claims barred by the applicable statute of limitations.

Even if LeCuyer's claims had been timely filed, the judge explained Reuter was still entitled to summary judgment because "there [wa]s no factual basis on this record [nor] evidence that a rational fact finder could use to conclude that Reuter caused the damage to the sidewalk in the area where [LeCuyer] fell." The judge expressly found:

> There's no evidence on this record that Reuter accessed the [P]roperty by [South] Iroquois Avenue nor the sidewalk. There [wa]s no dispute that Reuter had stopped working at the [P]roperty by November 16, 2020. There's no dispute to . . . Hans[e]n['s] . . . testimony that he insured that the job site was safe, clean and that he testified there was no damage to the sidewalk.

The judge also found no evidence in the record "that Reuter was . . . negligent with regard to the sidewalk[]" and "no evidence . . . the broken sidewalk was caused by Reuter." The judge concluded it would be inappropriate to permit a jury to speculate about the damaged sidewalk. Based on these findings, the judge granted summary judgment to Reuter and dismissed LeCuyer's complaint with prejudice.

LeCuyer moved for reconsideration. In support of his reconsideration motion, LeCuyer submitted a March 10, 2025 affidavit. This affidavit post-

dated the February 24, 2025 order granting summary judgment to Reuter. According to the belatedly submitted affidavit, LeCuyer claimed he "was not aware Reuter had performed work at the [Property]" until he received Christaldi's letter. LeCuyer claimed that if he had known Reuter worked at the Property, he would have informed his attorney. Although LeCuyer's attorney acknowledged LeCuyer knew Reuter worked near the Property, he maintained LeCuyer had "no specific knowledge or reason to believe that Reuter . . . ever worked at the [Property]." According to LeCuyer's attorney, "[a] reasonable person that falls at a construction site with a contractor's sign at that site would reasonably conclude that they have the correct party unless they're instructed otherwise."

In denying reconsideration, the judge concluded LeCuyer's new certification proffered information the judge expected LeCuyer would have presented in opposition to Reuter's summary judgment motion. The judge found LeCuyer failed to provide "any additional evidence," nor was "anything on the record that would alter [her] prior findings." The judge reiterated her reasons for granting summary judgment. Specifically, the judge cited LeCuyer's failure to act with the required due diligence to identify Reuter as a potential defendant.

On appeal, LeCuyer argues Reuter waived its statute of limitations defense by failing to pursue the defense earlier. Alternatively, LeCuyer contends the judge should have applied the statute of limitations and fictitious pleading rules liberally in the interest of justice. Additionally, LeCuyer asserts the judge erred in granting summary judgment because there was a genuine dispute of material fact whether Reuter was liable for the sidewalk damage. We reject these arguments.

We review orders granting summary judgment de novo, applying the same standard as the motion judge. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Under that standard, we must "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "To the extent that the grant or denial of summary judgment is based on an issue of law, [appellate

courts] owe no deference to an interpretation of law that flows from established facts." State v. Perini Corp., 221 N.J. 412, 425 (2015) (citing Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013)). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 540 (1995).

We first address LeCuyer's argument the judge erred in dismissing his negligence claims as barred by the two-year statute of limitations. We disagree.

"Statutes of limitations are designed to stimulate litigants to pursue their causes of action diligently and 'to spare the courts from litigation of stale claims.'" Farrell v. Votator Div. of Chemtron Corp., 62 N.J. 111, 115 (1973) (quoting Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314 (1945)). "[S]tatutes of limitations are statutes of repose and the principal consideration underlying their enactment is one of fairness to the defendant." Lopez v. Swyer, 62 N.J. 267, 274 (1973) (citing Developments in the Law: Statutes of Limitations, 63 Harv. L. Rev. 1177, 1185 (1950)).

New Jersey's statute of limitations for tort actions provides: "[E]very action at law for an injury to the person caused by the wrongful act, neglect or

12

default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued." N.J.S.A. 2A:14-2(a). Under this statute, LeCuyer was required to file his personal injury action within two years from the date of the incident in the absence of certain exceptions.

LeCuyer allegedly tripped and fell on January 25, 2021. He filed his original personal injury complaint on January 20, 2023. Six months later, LeCuyer amended his complaint to name Reuter in place of a fictitiously designated party. The June 2023 amended complaint was filed after expiration of the two-year statute of limitations.

For LeCuyer's June 2023 amended complaint to fall within the statute of limitations, the amended pleading had to relate back to LeCuyer's original complaint. See R. 4:9-3. The judge found LeCuyer's June 2023 amended complaint, naming Reuter as a new defendant, did not relate back to the original complaint. Therefore, the judge concluded the claims against Reuter were time-barred.

LeCuyer next argues Reuter waived its statute of limitations defense by failing to pursue the defense earlier. LeCuyer also claims the judge erred in

13

finding he failed to act diligently in identifying Reuter and should have relaxed the statute of limitations and applied the fictitious pleading rule.

Contrary to LeCuyer's argument, Reuter did not waive its statute of limitations defense. The defense was among the many affirmative defenses asserted in Reuter's answer to LeCuyer's June 2023 amended complaint.

Because he acknowledged Reuter's answer included the statute of limitations as an affirmative defense, LeCuyer contends Reuter lacked any factual or legal basis for the defense at the time it was asserted. For the first time on appeal, LeCuyer asserts Reuter waived the defense and, therefore, his negligence claims were not barred.

"[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indemnity Insurance Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). At no time did LeCuyer raise Reuter's waiver of the statute of limitations defense in his submissions to the trial court. LeCuyer's attorney only mentioned the issue briefly during oral argument on the reconsideration motion. Because LeCuyer's

waiver argument does not involve the court's jurisdiction or a matter of public interest, we could decline to consider the argument.

Even if we considered LeCuyer's belatedly raised waiver argument, we are satisfied Reuter did not waive the statute of limitations defense. Rule 4:5-4 permits a party to assert the "statute of limitations" as an affirmative defense in a responsive pleading. The parties agree Reuter included a statute of limitations defense in its answer to LeCuyer's June 2023 amended complaint. Therefore, there is no dispute Reuter preserved the defense. See Baez v. Paulo, 453 N.J. Super. 422, 446-47 (App. Div. 2018) (finding statute of limitations defense preserved throughout litigation if raised in an answer).

LeCuyer mistakenly relies on White v. Karlsson, 354 N.J. Super. 284, 289 (App. Div. 2002), to argue Reuter's simply pleading the statute of limitations did not preserve the defense. However, this case is factually distinguishable from White. That case involved a defendant who filed numerous affirmative defenses, including a statute of limitations defense, without any "possible basis in fact" and without conducting any discovery aimed to support a statute of limitations defense. 354 N.J. Super. at 286-88. In White, the defendant admitted "[s]he did not recognize the possibility of a statute-of-limitations defense until shortly before trial." Id. at 290. As a result, we found the defendant in White

violated Rule 1:4-8 by including frivolous affirmative defenses and violated Rule 4:5-4 by not conducting a reasonable inquiry before asserting a statute of limitations defense. Ibid.

In this case, Reuter's statute of limitations defense was supported by the facts and the law. During discovery, Reuter sought to depose LeCuyer to determine whether LeCuyer knew about Reuter's work at the Property before he filed his personal injury action. See Cipriani Builders, Inc. v. Madden, 389 N.J. Super. 154, 172-73 (App. Div. 2006) (holding a statute of limitations defense was not waived by defendants' failure to move for summary judgment earlier because defendants required discovery to determine the viability of the defense). On this record, we are satisfied Reuter took timely steps to support its statute of limitations defense and, therefore, it did not waive the defense.

We next address LeCuyer's argument that the judge should not have strictly applied the statute of limitations or the fictitious pleading rule, Rule 4:9-3, because Reuter was not prejudiced by any delay in his naming it as a defendant.

Rule 4:9-3 states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the

date of the original pleading; . . . An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.

Rule 4:26-4 provides: "[I]f the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification." The Rule requires a plaintiff to amend the complaint upon the filing of a motion, stating the defendant's true name, accompanied by an affidavit stating the manner in which the plaintiff obtained that information. Our New Jersey Supreme Court "recognized that an amended complaint identifying the defendant by its true name relates back to the time of filing of the original complaint, thereby permitting the plaintiff to maintain an action that, but for the fictitious-party practice, would be time-barred." Viviano v. CBS, Inc., 101 N.J. 538, 548 (1986) (citing Farrell, 62 N.J. at 120-23).

While "[c]ompliance with the Rules of [Court] is essential for an orderly legal system," the goal "is not so much rigid compliance with the letter of the

17

Rules as it is the attainment of substantial justice." Id. at 550. Under Rule 1:1-2(a), the requirements of Rules 4:9-3 and 4:26-4 may be relaxed if rigid application would produce an unjust result.

LeCuyer's reliance on Farrell and Viviano is misplaced. In Viviano, the Court identified several factors a plaintiff must demonstrate to invoke the protection of the fictitious pleading rule after the expiration of the statute of limitations. 101 N.J. at 553. Among the factors a plaintiff must show is "the new defendant had sufficient notice of the institution of the action not to be prejudiced in maintaining his or her defense" and "the new defendant knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her." Ibid.

As the judge found in this matter, LeCuyer could have called Christaldi between January 2021 and April 2023 and asked who performed work at the Property. Alternatively, the judge found LeCuyer could have contacted the municipality to identify anyone who obtained municipal permits for work at the Property. The sign at the Property included a telephone number for "Jim Christaldi & Son," and LeCuyer could have called that number to inquire who worked at the Property on or before January 2021 when LeCuyer allegedly

18

tripped and fell. Because LeCuyer failed to take these basic steps, the judge concluded relaxation of the fictitious pleading rule was not warranted.

Additionally, LeCuyer argues Reuter failed to demonstrate "prejudice" attributable to the delay in naming it as a defendant in place of a fictitiously identified party. However, LeCuyer was still required to demonstrate Reuter had notice of the personal injury action or knew or should have known that, but for a mistake in identifying Reuter as the proper party, the personal injury action would have been filed against Reuter earlier.

Reuter first learned about LeCuyer's claims in June 2023. That date was five months after the statute of limitations had expired. Because LeCuyer failed to conduct the necessary diligence to afford Reuter sufficient notice of the claims made against it, the judge did not err in applying the statute of limitations and dismissing LeCuyer's complaint as time-barred.

We also reject LeCuyer's argument that there was a genuine issue of material fact precluding summary judgment as a matter of law. LeCuyer argues he presented sufficient evidence to allow a jury to decide if Reuter damaged the sidewalk causing him to trip and fall.

Here, the judge granted summary judgment to Reuter because "there [wa]s no factual basis on this record [nor] evidence that a rational fact finder could use

19

to conclude that Reuter caused the damage to the sidewalk in the area where [LeCuyer] fell." The judge found LeCuyer failed to provide evidence that Reuter's machines traversed the South Iroquois Avenue sidewalk. The judge properly rejected LeCuyer's argument that a jury could infer Reuter damaged the sidewalk because Reuter had the ability and opportunity to damage the sidewalk during its demolition work as LeCuyer offered only unsupported speculation to support such an inference.

We next consider LeCuyer's argument the judge erred in denying his motion for reconsideration. We review a trial court's order on a reconsideration motion under an abuse-of-discretion standard. Branch, 244 N.J. at 582. "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)) (internal quotation marks omitted).

Because we agree the judge properly granted summary judgment to Reuter, the judge did not abuse her discretion in denying LeCuyer's motion for reconsideration in which he re-argued the same issues.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2490-24