**Robert L. WILLIAMSON, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant,**

v.

**NASHVILLE AND ASHLAND CITY RAILROAD COMPANY, Star Trailer Services, Inc., Miller Trailers, Inc., Third Party Defendants.**

Civ. A. No. 88–1641.

United States District Court, M.D. Pennsylvania.

April 26, 1989.

Neil J. Rovner, Angino & Rovner, Harrisburg, Pa. for plaintiff.

David C. Eaton, Nauman, Smith, Shissler & Hall, Harrisburg, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

This is a personal injury case brought under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60. The plaintiff sued Consolidated Rail Corporation for injuries he sustained when a trailer he was loading collapsed. Conrail filed a third party complaint against Nashville and Ashland City Railroad Company (NAC), the lessor of the trailer, Miller Trailers, Inc., the trailer's manufacturer, and Star Trailer Services, Inc., which had previously repaired it. Now before the court are the third party defendants' motions to dismiss the third party complaint for lack of personal jurisdiction. Because we find constitutionally inadequate contacts with Pennsylvania, the motions will be granted.

Fed.R.Civ.P. 4(e) permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under state law. Pennsylvania law provides two bases for personal jurisdiction over a nonresident corporation. The statutory framework tracks the two jurisdictional theories defined by the Supreme Court in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Strick Corporation v. A.J.F. Warehouse Distributors, Inc.,* 532 F.Supp. 951 (E.D. Pa.1982). First, 42 Pa.C.S.A. § 5301 provides as follows:

(a) **General rule.**—The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person ...:

.    .    .    .    .

(2) Corporations.—

(i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.

(ii) Consent, to the extent authorized by the consent.

(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

.    .    .    .    .

(b) **Scope of jurisdiction.**—When jurisdiction over a person is based upon this section any cause of action may be asserted against him, whether or not arising from acts enumerated in this section....

Section 5301 follows *International Shoe's* description of the jurisdictional significance of a corporation's presence in the forum:

[T]he terms "present" or "presence" are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process.... "Presence" in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on.... [In addition] there have been

instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.

*International Shoe,* 326 U.S. at 316–18, 66 S.Ct. at 158–59, 90 L.Ed. at 102–03, *quoted in Strick,* 532 F.Supp. at 955. Thus, even though a cause of action arises from a defendant's non-forum related activities, a federal court may entertain a suit against that defendant because the presence of the section 5301 factors shows a sufficient connection with the state to satisfy due process. *Strick.*

The second jurisdictional provision, 42 Pa.C.S.A. § 5322, provides as follows:

(a) **General rule.**—A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

.    .    .    .    .

(2) Contracting to supply services or things in this Commonwealth.

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

.    .    .    .    .

(b) **Exercise of full constitutional power over nonresident.**—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

The exercise of jurisdiction under section 5322 is restricted to causes of action that arise from those contacts with the state, i.e. from forum related activities. 42 Pa.C.S.A. § 5322(c).

When personal jurisdiction over a nonresident defendant is asserted on a basis other than consent, physical presence, or doing business, the claim must arise from a specific forum-related act. Minimum contacts analysis is inappropriate where defendant's forum activities do not give rise to the claim. Instead, when pressing a non-forum-related claim, plaintiff must demonstrate that the defendant maintained "continuous and substantial" forum affiliations. *See, International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Compagnie des Bauxites de Guinea v. Insurance Co. of North America,* 651 F.2d 877, 889–91, (3d Cir.1981) (Gibbons, J., dissenting).

*Schwilm v. Holbrook,* 661 F.2d 12, 14 (3d Cir.1981).

The Third Circuit utilizes a two-step process to determine whether personal jurisdiction may be asserted over a nonresident defendant. *See Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539 (3d Cir.1985); *Dollar Savings Bank v. First Security Bank of Utah,* 746 F.2d 208 (3d Cir.1984). First, the court must decide whether the cause of action arises from the defendant's forum or non-forum related activities. When a plaintiff's claim is forum

related, the court must determine whether there are enough contacts with the forum arising out of that transaction to justify personal jurisdiction. Because 42 Pa.C.S. A. § 5322(b) makes the statutory reach coextensive with the requirements of due process, the statutory and constitutional standards are identical, i.e. minimum contacts.

"The defendant's conduct and connection with the forum State ... [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.[2d] 490 (1980). Furthermore, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228 [1239, 2 L.Ed.2d 1283] (1958). And, of course, the defendant's contacts must be sufficient so that subjecting defendant "to jurisdiction in a Pennsylvania forum does not offend *International Shoe's* traditional notions of fair play and substantial justice." *Dollar Savings Bank,* 746 F.2d at 213.

*Gehling,* 773 F.2d at 541.

In the case of a claim arising from the defendant's nonforum related activities, in order to establish general personal jurisdiction "the plaintiff must demonstrate that in other respects (other than contacts related to the claim itself) the defendant has maintained 'continuous and substantial' forum affiliations." *Gehling,* 773 F.2d at 541 (quoting *Reliance Steel Products v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982)). Under 42 Pa.C.S.A. § 5301, a plaintiff is required to show that a defendant carries on "a continuous and systematic part of its general business within this Commonwealth." 42 Pa.C.S.A. § 5301(a)(2)(iii).

■ In this case we need not dwell on whether the third party defendants' conduct was forum or non forum related because under the less stringent minimum contacts test we find insufficient contacts

with the state to warrant the exercise of personal jurisdiction. From the materials before us we find no acts by which they have purposefully availed themselves of the privilege of conducting activities within Pennsylvania.

In support of its motion to dismiss, NAC has filed an affidavit of its president who writes that NAC is a Tennessee corporation with its principal place of business in Atlanta, Georgia, and no offices or agents in Pennsylvania. The company is not registered or qualified to conduct business, pays no taxes and has not advertised here. NAC is licensed by the Interstate Commerce Commission and provides truck trailers that are carried "piggyback" on various railroads, in return for a daily fee paid by the subscribers possessing the trailers. NAC also contracts with terminal operators, none of which are in Pennsylvania, who receive trailers from railroads or trucking companies for storage, repair or transfer to other railroads or trucking companies.

Star has filed an affidavit of its president who maintains that Star is a Missouri corporation with offices only in Illinois. It is not registered or qualified to conduct business, has no agents, pays no taxes and has not advertised in Pennsylvania. Star is in the business of repairing, storing and handling truck trailers, such as those owned by NAC and carried by Conrail. It accepts, handles, repairs and delivers trailers only in Illinois, is paid by the owners of the trailers and has no contracts with the railroads.

Miller has filed an affidavit in which its president asserts that Miller is a Florida corporation that conducts no business in Pennsylvania. It is not registered, has no offices or agents and has never advertised here. Miller built the trailer in which the plaintiff allegedly was hurt and shipped it to NAC in Savannah, Georgia, on July 23, 1985.

Conrail does not dispute the factual averments in the affidavits. Instead, it argues that NAC provided trailers to Conrail with the knowledge and expectation that they would be used in and pass through Penn-

sylvania, that Miller manufactured trailers with the knowledge and expectation that they would be used in interstate commerce, and that Star knew of the use in interstate commerce of the trailers it repaired. In support of those contentions Conrail has produced several affidavits of its employees from which we learn that in 1986 it paid NAC roughly $100,000 per month for trailer usage, it carried nearly one million trailers on thirty Trailvan trains, and in excess of ninety percent of all Trailvan traffic either originated in, was destined for or passed through Pennsylvania. From the figures in the affidavits, Conrail argues that in a single day seven percent of NAC's trailer fleet is on Conrail trains in Pennsylvania.

■ Reduced to its essence, Conrail's position is that under the "stream of commerce" theory first discussed by the Supreme Court in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), use of NAC's trailers in Pennsylvania was sufficiently foreseeable to justify the court's exercise of *in personam* jurisdiction. However, it is clear that " 'foreseeability' alone has never been a sufficient benchmark for jurisdiction under the Due Process Clause." *Id.* at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500. As noted above:

> the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501 (citing *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

In *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1031, 94 L.Ed.2d

92, 102 (1987) (plurality opinion), the Supreme Court revisited the stream of commerce problem and reaffirmed its earlier holdings that "[j]urisdiction is proper ... where the contracts proximately result from actions by the defendant *himself* which create a 'substantial connection' with the forum State." (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985) and *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2. L.Ed.2d 223, 226 (1957)).

> The "substantial connection," *Burger King,* 471 US [462] at 475, 85 L Ed 2d 528, 105 S Ct 2174 [at 2183]; *McGee,* 355 US [220] at 223, 2 L Ed 2d 223, 78 S Ct 199 [at 201] between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State. Burger King, supra,* [471 U.S. 462] at 476, 83 L Ed 2d 528, 100 S Ct 2174 [at 2184]; *Keeton v. Hustler Magazine, Inc.* 465 US 770, 774, 79 L Ed 2d 790, 104 S Ct 1473 [1478] (1984). The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi,* 480 U.S. at 112, 107 S.Ct. at 1033, 94 L.Ed.2d at 104.[1]

---

**1.** Although *Asahi* is a plurality opinion, we find it most persuasive because of its agreement with and favorable citation to *Max Daetwyler Corp. v.*

*R. Meyer,* 762 F.2d 290 (3d Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

We have no doubt that the third party defendants could have foreseen that NAC's trailers would be used by Conrail in Pennsylvania. However, Conrail has not alleged any actions by them to purposefully avail themselves of the Pennsylvania market. They do no business here, have no office, agents, employees or property here, and do not advertise or solicit business here. All dealings with Conrail occurred elsewhere and they have no control over Conrail's choice of location for use of the trailers. To require them to litigate in Pennsylvania would offend *International Shoe's* traditional notions of fair play and substantial justice. Accordingly, we find we do not have personal jurisdiction over the third party defendants.

## ORDER

AND NOW, this 26th day of April, 1989, it is ordered that the motions to dismiss filed by third party defendants Nashville Ashland City Railroad Company, Star Trailer Services, Inc., and Miller Trailers, Inc., is granted. Consolidated Rail Corporation's action against the third party defendants is hereby dismissed.