Robert **BRYAN** and Rosemary Bryan, Plaintiffs,

v.

**ASSOCIATED CONTAINER TRANSPORTATION (A.C.T.) and/or Blue Star Pace, Ltd., Weddel Crown, Ltd., and/or John Doe(s) 1 to 5, a fictitious name currently used to designate unknown parties, J/S/ A/, Defendants.**

Civ. A. No. 92–2933.

United States District Court, D. New Jersey.

Nov. 4, 1993.

Louis George Hasner, Hockfield, Hasner, Weiss & Rosenberg, Cherry Hill, NJ, for plaintiffs.

Christopher Raleigh, Hill, Betts & Nash, Jersey City, NJ, for defendants, Associated Container Transp. (A.C.T.) and Blue Star Pace, Ltd.

Stephen J. DeFeo, Brown & Connery, Westmont, NJ, for defendant, Weddel Crown, Ltd.

## OPINION

SIMANDLE, District Judge:

This action was brought by plaintiffs to recover for injuries sustained as a result of an accident which occurred while plaintiff Robert Bryan was unloading a container packed with boxes of frozen beef shipped by defendant A.C.T./Blue Star Pace, Ltd. The initial complaint was filed against only defendants A.C.T./Blue Star and John Does 1–5 in the Superior Court of New Jersey. The case was subsequently removed to federal court, and leave was granted by the Honorable Joel B. Rosen, U.S. Magistrate Judge, on March 5, 1993 to allow plaintiffs to amend their complaint to add an additional defendant, Weddel Crown., Ltd. (now known as Weddel New Zealand, Ltd.). Weddel moves pursuant to Fed.R.Civ.P. 12(b) to dismiss the claims against it on the grounds of lack of personal and subject matter jurisdiction, and on the additional ground that the action against it is barred by the applicable statute of limitations.

### Discussion

The principal issues for decision are: (a) whether personal jurisdiction exists in New

Jersey over a New Zealand meatpacking corporation which packed an ocean-going shipping container with its products and delivered the product to a shipping line in Wellington, New Zealand for transport to the shipper's terminal in New Jersey with respect to injuries to a worker unloading the container allegedly caused by the foreign corporation's negligent packing of the container; and (b) whether plaintiffs' complaint naming a John Doe defendant was consistent with N.J.Ct.R. 4:26–4, which would apply to toll the New Jersey two-year statute of limitations (N.J.S.A. 2A:14–2) by operation of Rule 15(c)(1), Fed.R.Civ.P.

## A.  *Personal Jurisdiction*

Plaintiff Robert Bryan alleges that he was an employee of Holt Cargo Systems, Inc., in Gloucester, New Jersey, on August 21, 1990, when he took delivery of a 40–foot ocean container from A.C.T./Pace Line's terminal and transported same across the street to a refrigerated warehouse for unpacking. As he opened the door of the container, he claims that 20 to 30 cartons of frozen beef fell out of the container onto his body, striking him and causing injuries. His complaint alleges that these injuries were caused by the negligent, careless or improper stacking of the boxes by defendants in the container. He alleges essentially that defendant Weddel loaded the ocean container with its beef products in New Zealand and delivered the sealed container to defendant A.C.T. for shipping to A.C.T.'s Port Philadelphia terminal in Gloucester, New Jersey, and that Weddel's allegedly negligent stacking of the container in New Zealand caused his injuries when he opened the container at the end of its voyage in New Jersey.

Defendant Weddel is a New Zealand company engaged in the businesses of slaughtering and processing livestock and the sale of meat and meat by-products. Follett–Clarke Aff. ¶ 2. Weddel was apparently brought into this lawsuit as a result of discovery engaged in by plaintiffs and defendant A.C.T./Blue Star which revealed that Weddel's name appeared on the container involved in plaintiff's accident and on the shipping documents for the container's contents.

It is Weddel's contention that its contacts with the state of New Jersey are insufficient to support this court's exercise of personal jurisdiction over it.

A federal district court may assert personal jurisdiction over a nonresident defendant to the extent permitted by the law of the forum in which the court is located. Fed. R.Civ.P. 4(e). New Jersey's long-arm statute, N.J.Ct.R. 4:4–4(c), provides for personal jurisdiction over nonresidents to the outermost limits provided by the United States Constitution. *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 154 (D.N.J. 1990); *Charles Gendler & Co. v. Telecom Equip. Corp.,* 102 N.J. 460, 469, 508 A.2d 1127 (1986). Thus, this court's inquiry is limited to whether personal jurisdiction over defendant comports with the due process clause of the Fourteenth Amendment. *DeJames,* 654 F.2d at 284; *Gitomer v. Rosefielde,* 726 F.Supp. 109, 110 (D.N.J.1989).

■ Absent proof of personal service in New Jersey, the basic criterion for evaluating whether the exercise of jurisdiction comports with due process was set forth by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), wherein the Supreme Court recognized the following:

> [I]n order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). In order for an individual's contacts with the forum state to constitute the requisite "minimum contacts," the connection with the forum state must be sufficient so that the individual "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286,

295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980)). Implicit in the requirement of minimum contacts is the necessity that there be some act or acts by virtue of which the defendant has purposely availed himself of the benefits and protections of the laws of the forum state. *Burger King,* 471 U.S. at 474–76, 105 S.Ct. at 2183–84; *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

■ The Supreme Court has established a two-part analysis for determining whether a forum state can assert personal jurisdiction over a nonresident defendant in accordance with due process. *See Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184; *see also Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 701 (3d Cir.1990) (applying two-part test for assertion of personal jurisdiction over nonresident defendant). First, a court must determine whether "minimum contacts" exist between the nonresident defendant and the forum state. *Id.* Second, a court must consider these minimum contacts in light of "other factors" to determine whether the assertion of personal jurisdiction would comport with notions of fair play and substantial justice inherent in the Due Process Clause. *Id.* Such "other factors" include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* 471 U.S. at 477, 105 S.Ct. at 2184 (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564).

■ As a preliminary proposition, jurisdiction is not proper if the connection between the defendant and the State of New Jersey is found to be the "result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* 471 U.S. at 475, 105 S.Ct. at 2183 (citations omitted). Therefore, plaintiffs, as the party with the burden of proving the existence of personal jurisdiction, must demonstrate more than "random," "fortuitous," or "attenuated" contacts with the State of New Jersey by defendant Weddel.

■ The Third Circuit has distinguished between "personal jurisdiction in cases where the defendant's forum-related activities do not give rise to the claim, and personal jurisdiction in cases where the claim arises out of a specific forum-related act or series of acts." *Paolino v. Channel Home Centers,* 668 F.2d 721, 724 (3d Cir.1981). When the claim at issue is not premised on the defendant's activities in the forum state, the plaintiff must show that contacts between the defendant and the forum are substantial, continuous and systematic ("general jurisdiction"). *Reliance Steel Products Co. v. Watson, Ess, Marshal & Enggas,* 675 F.2d 587, 588 (3d Cir.1982). When the cause of action arises out of the defendant's activities within the forum ("specific jurisdiction"), the court must determine "whether the relationship of the transaction at issue to the forum justifies the forum state's assertion of jurisdiction over the defendant." *Electro–Catheter Corp. v. Surgical Specialties Instrument Co., Inc.,* 587 F.Supp. 1446, 1449 (D.N.J.1984) (citing *Paolino,* 668 F.2d at 724; *Reliance Steel,* 675 F.2d at 588).

The burden of establishing "general jurisdiction" is more difficult "for the facts required to assert general jurisdiction must be extensive and persuasive." *Reliance Steel,* 675 F.2d at 589; *see also Compagnie Des Bauxites De Guinne v. L'Union,* 723 F.2d 357, 362 (3d Cir.1983) (recognizing that where the cause of action arises from an event unrelated to the forum "the defendant's contacts with the forum must be qualitatively and quantitatively greater than where the cause of action is forum-related"). Here, however, I consider only whether specific jurisdiction is adequately supported and need not consider whether Weddel's contacts with New Jersey satisfy the more stringent standards applicable where general jurisdiction is asserted, as it is the very conduct of Weddel at issue in this case which is alleged to implicate the purposeful availment by Weddel of the forum state, New Jersey.

In support of its motion, Weddel submits an affidavit executed by its secretary, David Martin Follett–Clarke which, if unrebutted, might raise insurmountable obstacles to this court's assertion of personal jurisdiction over

it. Weddel asserts that it does not engage in the sale or distribution of its products outside of New Zealand and Fiji. Follett–Clarke Aff. ¶ 5. It further testifies through Mr. Follett–Clarke that it does not do business in New Jersey; that it does not advertise or market its products in New Jersey; that its only offices and facilities are located in New Zealand and Fiji; that "any action or conduct related to the sale of meat is consummated and completed by Weddel in New Zealand"; and that it does not create, control, or employ any distribution systems for its products in New Jersey. *Id.* ¶¶ 5 and 8. Moreover, Weddel asserts that it is "not aware that its products are shipped directly to any location in New Jersey." *Id.* ¶ 6. Specifically pertinent to this case, Weddel notes that the bill of lading for the cargo at issue which emerged through discovery indicates the point of destination for the cargo was "Philadelphia," and that Weddel "has no documents or information to lead it to conclude that any of its products are brought by ship to New Jersey from New Zealand." *Id.*

The affidavit is somewhat vague as to whether Weddel is itself engaged in the shipping of some of its products, albeit after "sale" of those products, to the United States. Although the affidavit states that "in the typical arrangement" Weddel sells the livestock to purchasers in New Zealand or Fiji, it goes on to say that "in some instances the meat products are shipped to ports in other countries," presumably after sale in light of the additional statement that "[a]ny action and conduct related to the sale of meat is consummated and completed by Weddel in New Zealand." *Id.* ¶ 5.

This ambiguity is significant because an opposing affidavit supplied by defendant A.C.T./Blue Star suggests that Weddel itself—and not subsequent purchasers of Weddel's products—routinely selects the A.C.T./Blue Star line to ship its products to the United States. *See* Schultz Aff. ¶ 5. Assuming for the moment that Weddel was aware that, as A.C.T./Blue Star states, all A.C.T./Blue Star shipments destined for "Philadel-

phia" during the period 1985–1991 were in fact discharged in Gloucester, New Jersey, *id.*, the issue of whether Weddel itself shipped its products via A.C.T./Blue Star to New Jersey, even assuming the shipping was accomplished after sale of the products, is of consequence to the present motion.[1]

██ This issue is significant because recent case law suggests that merely placing one's products into a "stream of commerce" which carries those products to the forum state, even if combined with actual knowledge that the stream of commerce will carry those products to the particular foreign location, may not be sufficient to satisfy the demands of the due process clause. *See Asahi Metal Ind. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion); *Williamson v. Consolidated Rail Corp.,* 712 F.Supp. 48 (M.D.Pa.1989). On the other hand, the court is aware of no reason to hold that the relevant standard—minimum contacts based upon purposeful availment of the forum—cannot be satisfied under circumstances where a company, having officially "sold" its products elsewhere, goes on to engage in a course of conduct in which it arranges for the shipping of the products it "sold" to the forum state and the suit's subject matter arises from the unloading of the products from the shipment in the forum state. The stream of commerce theory recently rejected by a plurality of the Court in *Asahi* involved a situation where, after sale of a component part by the defendant to another company abroad, no further action was taken *vis-a-vis* the product by the seller; although the seller might have known some of its products would end up in California by virtue of the actions of the purchaser or others further down the chain of sales, no action was taken by the seller which could be said to have been "purposefully directed toward the forum state." *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032. In contrast, the facts before the court on Weddel's motion might be understood to indicate some purposeful activity by Weddel toward New Jersey,

---

1. The ultimate question is whether Weddel had the requisite minimum contacts with the state of New Jersey; there is no "national contacts" stan-

dard. *See Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293–95 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

namely the shipping via A.C.T./Blue Star of its products to New Jersey after sale. Any "stream of commerce" argument Weddel relies upon is accordingly inapposite.

■ In light of this discussion, I must consider the issue of whether Weddel knew it was shipping its products to New Jersey, as opposed to Pennsylvania or any other state in the United States. It is Weddel's contention that it knew some of its products were being shipped after sale to Pennsylvania, but not to New Jersey. Follett–Clarke Aff. ¶ 6. It is critical to Weddel's success on this motion that its purposeful activities were in fact limited to the state of Pennsylvania. If Weddel in fact selected A.C.T./Blue Star to ship its products to the United States, and if in fact Weddel believed those ships only landed in Pennsylvania, it could not be said to have undertaken purposeful activities with respect to New Jersey.[2] On the other hand, if Weddel did engage in a course of conduct of shipping its products via A.C.T./Blue Star to the United States, and if it also knew that A.C.T./Blue Star shipments landed in New Jersey, such conduct would appropriately be characterized as a purposeful availment of the forum state, New Jersey.

Conflicting evidence has been presented to the court on this point. The affidavit submitted by A.C.T./Blue Star contains the following statement:

> During the period 1985 through October 1, 1991, *all* ACT/Pace Line shipments which were destined for "Philadelphia" were in fact discharged in Gloucester, New Jersey. *This fact is well known to Weddel Crown* (i.e., the shipper of the cargo) since it is the entity which has chosen to use ACT/Pace Line as its ocean carrier.

Schultz Aff. ¶ 5 (latter emphasis added). The assertion regarding Weddel's knowledge is accorded some further substance by the additional testimony that

> Weddel is a substantial supplier of meat products to the United States and has shipped cargo on every ACT/Pace Line vessel which has discharged in the United

States for the last twenty years. Based on my observations, Weddel's products were carried on every ACT/Pace Line vessel which discharged at Gloucester, New Jersey during the 1985–1991 time period described above.

*Id.* at ¶ 6.

The court thus finds itself presented with directly conflicting evidence on the issue of whether Weddel knew it was shipping its products to New Jersey. As the court in *LaRose v. Sponco Mfg., Inc.,* 712 F.Supp. 455 (D.N.J.1989) noted, there is no statutory method in place by which to resolve issues of disputed fact which arise in the context of a motion to dismiss for lack of personal jurisdiction. *Id.* at 458 n. 2. Like the court in *LaRose,* I choose to proceed on the basis of the affidavits submitted, without requiring an evidentiary hearing at the present time. By proceeding on the basis of affidavits, I necessarily require only that plaintiff meet a threshold burden of pleading/persuasion to establish a *prima facie* case of jurisdiction, and I consider the written submissions in the light most favorable to plaintiff, as the nonmoving party. *Id.* at 458. Plaintiff is required, however, to put forth evidence to make out a *prima facie* case because it is ultimately the plaintiff's burden to show that jurisdiction exists. *Id.* at 457 (citing *Provident Nat'l. Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987)). Thus, for purposes of the present motion, prior to trial and prior to a conducting an evidentiary hearing, "once the plaintiff has met the burden and established a *prima facie* case of jurisdiction, that suffices, regardless of any controverting presentation by the moving party, to defeat the motion." *Id.* at 458.

Considering the evidence presented in the light most favorable to plaintiff, I find that the requisite *prima facie* showing of personal jurisdiction over Weddel has been made. Accepting as true (1) the implication in the Schultz affidavit, not directly rebutted by Weddel, that Weddel itself engages A.C.T./

---

**2.** The court has been presented with no reason to doubt Weddel's assertion that it has never engaged in any distribution or other related activities in the United States, which would include activities related to transporting its products elsewhere after a ship carrying its products to the United States docked and unloaded.

Blue Star to ship certain of its products to the United States; and, (2) the testimony by Mr. Schultz that Weddel has shipped cargo on every A.C.T./Blue Star vessel destined for the United States between 1985 and 1991, and that every "Philadelphia"-destined A.C.T./Blue Star vessel actually discharged at A.C.T.'s terminal in New Jersey, and that therefore Weddel knew its cargo was destined for New Jersey, I find for purposes of the present motion that Weddel's actions with respect to New Jersey constitute a purposeful availment of New Jersey, the forum state.

As indicated above, notwithstanding Weddel's purposeful availment of the forum state, an additional inquiry remains—namely, whether this court's assertion of personal jurisdiction over Weddel comports with " 'traditional notions of fair play and substantial justice' " so as not to offend due process. *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). In *Asahi*, a majority of the court agreed that this second requirement was not satisfied. *Asahi*, 480 U.S. at 114–17, 107 S.Ct. at 1033–34. Like *Asahi*, the instant case involves a defendant located virtually the greatest possible distance from the forum state. But unlike the situation in *Asahi*, the present case arises out of an underlying transaction involving the defendant which is alleged to have transpired in the forum state. Moreover, the interest of the forum state in the present case is significantly greater than the interest of the forum state in *Asahi*, because in *Asahi* the plaintiff's claim against the defendant, the purchaser of the defective component part at issue, had been settled and all that remained was a claim for contribution by the defendant purchaser of the component part against the foreign seller of

the part. Finally, as the court noted in *Asahi*, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114, 107 S.Ct. at 1033.

In this case arising from the defendant's allegedly negligent packing of its shipment of beef to New Jersey, which was one of a long course of such shipments to New Jersey, and in light of the establishment of minimum contacts of Weddel with New Jersey and the interest of New Jersey in the safety and welfare of its workers, the court finds that the assertion of personal jurisdiction over Weddel does not offend "traditional notions of fair play and substantial justice." The court thus exercises specific jurisdiction over defendant Weddel in this matter. Defendant Weddel's motion to dismiss for lack of personal jurisdiction will, accordingly, be denied.

B. *Subject Matter Jurisdiction*

■ Weddel argues that, in addition to a lack of personal jurisdiction over it, the court lacks jurisdiction over the subject matter. The basis for this objection is plaintiffs' failure to include a statement regarding the grounds for subject matter jurisdiction in its amended federal complaint in this action, as required by Fed.R.Civ.P. 8(a). Plaintiffs acknowledge their complaint was "inartfully prepared," but argue that the court should permit them to cure this possible defect by amendment. It appears to the court that the omission can in fact be cured by amendment because diversity jurisdiction does exist; Weddel does not dispute the factual basis for the court's exercise of subject matter jurisdiction.[3] Because this defect would be cured by amendment asserting diversity jurisdiction under 28 U.S.C. § 1332, the court will

3. It was alleged by A.C.T./Blue Star in its removal petition that, as stated in plaintiffs' complaint, plaintiffs are citizens of Pennsylvania. In its petition, A.C.T./Blue Star further alleged that A.C.T. is a division of a corporation organized under the laws of the United Kingdom with its principal place of business in the United Kingdom, and that Blue Star is a corporation organized under the laws of the United Kingdom with its principal place of business in New York. For purposes of determining whether diversity juris-

diction exists, the court ignores the fictitious name pleadings. 28 U.S.C. § 1441(a). Moreover, plaintiffs claim damages in excess of $50,000, and A.C.T./Blue Star alleges in its removal petition that the amount in controversy exceeds $50,000. The addition of Weddel as a defendant has not destroyed diversity; in its motion papers, Weddel states that it is a New Zealand corporation. No party disputes these facts or the conclusion that diversity jurisdiction may be asserted.

not dismiss the case for lack of subject matter jurisdiction. *See Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 339, 70 L.Ed. 682 (1926).

## C. *Statute of Limitations*

Having determined for present purposes that this court may properly exercise jurisdiction over the subject matter and personal jurisdiction over Weddel, I proceed to analyze Weddel's argument in favor of dismissal on statute of limitations grounds. For the reasons which follow, Weddel's motion will be denied.

■ I turn first to the issue of the relevant law to be applied to the statute of limitations question. Weddel suggests that New Jersey law governs, and that New Jersey's two year statute of limitations for tort actions, N.J.S.A. 2A:14–2, precludes plaintiffs from proceeding against it, as the amended complaint was filed on March 26, 1993, more than two years from the date of the accident on August 21, 1990. Although plaintiffs do not dispute that New Jersey law applies, co-defendant A.C.T./Blue Star has offered an argument that the applicable statute is the federal maritime statute of limitations, 46 U.S.C.App. § 763a, and that since the maritime statute provides for a three year limitations period, plaintiffs' claims against Weddel survive. Plaintiffs have not joined in this argument.

■ It is significant that the maritime limitations argument is propounded solely by co-defendant A.C.T./Blue Star because, unlike certain other choice of law issues, the application of maritime law to a plaintiff's claims is a matter about which a plaintiff exercises a degree of control. *See* Fed. R.Civ.P. 9(h).[4] That is, assuming without deciding that maritime jurisdiction is available for plaintiffs' claims, it must be affirmatively invoked by plaintiffs before it will be considered by the court to be the basis of jurisdiction where other bases of jurisdiction over plaintiff's claims also exist. *See Bodden v. Osgood,* 879 F.2d 184, 186 (5th Cir.1989) ("A plaintiff with a claim cognizable in the district court's admiralty/maritime jurisdiction and also cognizable on another basis of jurisdiction may invoke whichever jurisdiction he desires. . . . To invoke the admiralty jurisdiction, a plaintiff must insert a statement in his pleading identifying the claim [as such]. . . . Otherwise, unless the claim is cognizable only in admiralty, the special practice features for admiralty claims are not applicable") (citations omitted); *Harrison v. Glendel Drilling Co.,* 679 F.Supp. 1413, 1418 (W.D.La.1988) ("[W]here the complaint shows that both admiralty and some other basis of federal jurisdiction exist, the plaintiff must employ an 'identifying statement' in accordance with Rule 9(h) in order to be entitled to the special benefits afforded to admiralty litigants under the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims.").

An examination of plaintiffs' amended complaint reveals that the court has jurisdiction over the matter based on the diversity of the parties and, moreover, that diversity jurisdiction is the basis of jurisdiction invoked by plaintiffs. This case was originally filed in New Jersey Superior Court and removed by co-defendant A.C.T./Blue Star to federal court on the basis of diversity jurisdiction; it is not disputed that the parties are indeed diverse.[5] No Rule 9(h) statement appears in plaintiffs' amended complaint, and even in light of the present argument in opposition to Weddel's motion, plaintiffs have not sought

---

4. Rule 9(h) sets forth the special pleading provisions applicable to maritime and admiralty claims and provides in pertinent part:
   A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for purposes of Rule 14(c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in

admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. . . .
Fed.R.Civ.P. 9(h).

5. As noted in part B above, Weddel attacks the court's subject matter jurisdiction in the present motion on the limited ground that subject matter jurisdiction is not pleaded in the amended complaint; Weddel does not argue that diversity is in fact lacking.

leave to amend to include a Rule 9(h) statement in their complaint. Moreover, plaintiffs' original complaint contains a demand for a jury trial, a demand inconsistent with any alleged election by plaintiffs to proceed under maritime jurisdiction. *See* Fed. R.Civ.P. 38(e). Thus, because maritime jurisdiction is not the sole available basis of jurisdiction, and because it is clear that plaintiffs have not chosen to invoke the maritime jurisdiction of the court, I reject co-defendant A.C.T./Blue Star's argument for application of the maritime statute of limitations as inappropriate without engaging in an analysis of whether maritime jurisdiction could in fact be invoked. Such an analysis would only be appropriate if the argument espoused by the co-defendant were joined in by plaintiffs and accompanied by at least an indication that plaintiffs wished to amend their amended complaint.

■ Turning to the application of the New Jersey personal injury statute of limitations at N.J.S.A. 2A:14–2, which plaintiffs and Weddel apparently agree applies here, plaintiffs argue that their claims against Weddel are not barred despite being asserted more than two years from the date of the accident. Although plaintiffs do not mention the relevant Federal Rule of Civil Procedure in their letter brief, it appears that plaintiffs are propounding an argument under Rule 15(c), Fed.R.Civ.P. As will be discussed in detail below, where state law provides the relevant limitations period, Rule 15 permits, under certain circumstances, the "relation back" of an amended pleading beyond the limitations period where the state limitations law would permit relation back. It is apparently plaintiffs' position that New Jersey limitations law, specifically New Jersey's fictitious pleading statute, permits relation back of an amendment naming a defendant in the place of a fictitious defendant under the circumstances presented, and that therefore the federal rules must permit the amendment of plaintiffs' complaint beyond the otherwise applicable New Jersey limitations period to include Weddel as a defendant.

■ Rule 15(c)(1), Fed.R.Civ.P., as amended effective December 1, 1991, provides:

An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action.

*Id.* Without citing any pertinent authority, Weddel argues that this subparagraph of Rule 15 pertains only to situations other than amendment to include a party not properly named in the original pleading.[6] However, Rule 15(c)(1) is not, by its terms, so limited; nor is the court aware of any case law which so limits the rule's operation. It may be that Weddel is conflating the provisions of newly-added Rule 15(c)(1) with Rule 15(c)(3) as amended, which provides that an amendment of a pleading may relate back when:

the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied [i.e., where the claim asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading] and, within the period of Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3). Weddel's argument seems to be that *only* subdivision (c)(3) applies to an amendment concerning the naming of a party, and that subdivision (c)(3) cannot save the amended complaint because of the notice requirement. However, the comments to Rule 15(c)(1) and existing case law do not bear out Weddel's contentions.

The Advisory Committee notes to Rule 15(c)(1) make no reference to any such limitation to the terms of the amendment, but rather provide:

---

**6.** Weddel's citation to *Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171 (3d Cir.1977) is clearly inapposite because that case was decided before the 1991 amendments to Rule 15.

This provision is new. It is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law. Generally, the applicable limitations law will be state law.... Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim.

*Id.* Thus, as a general matter, if New Jersey law would permit the amendment made by plaintiffs after the running of the statute, the federal rules permit the amendment. *See Jordan v. Tapper,* 143 F.R.D. 567, 572 (D.N.J.1992). *Accord Jones v. Wysinger,* 815 F.Supp. 1127, 1129 (N.D.Ill.1993); *Crowe v. Mullin,* 797 F.Supp. 930, 932 (N.D.Ala.1992); *Jacobson v. McIlwain,* 145 F.R.D. 595, 602 (S.D.Fla.1992); *Ocasio Oritz v. Betancourt Lebron,* 146 F.R.D. 34, 35–36 (D.P.R.1992).

█ The statute upon which plaintiffs rely for their contention that New Jersey law would permit the amendment of their "John Doe" pleading to name Weddel more than two years after the date of the incident is New Jersey Court Rule 4:26–4. That rule provides:

> In any action ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name stating it to be fictitious and adding an appropriate description sufficient to identify him....

N.J.Ct.R. 4:26–4. "Where a defendant is sued in a fictitious name because of the plaintiff's inability to ascertain his identity despite diligent efforts, the complaint may be amended after the statute of limitations has run to substitute the defendant's true name and effect service on him, particularly where the defendant can show neither prejudice resulting from nor reliance upon the lapse of time." Comment to N.J.Ct.R. 4:26–4 (S. Pressler ed. 1992) (citing *Farrell v. Votator Div. of Chemetron Corp.,* 62 N.J. 111, 299 A.2d 394 (1973), and *Stegmeier v. St. Elizabeth Hosp.,* 239 N.J.Super. 475, 484–86, 571 A.2d 1006 (App. Div.1990), *inter alia).*

Thus, New Jersey law does provide a mechanism by which the name of a party not known to a plaintiff at the time of instituting a suit may be substituted for a fictitious name after the running of the statute provided that the description of the fictitious defendant was sufficient to identify it. The only remaining question is whether the prerequisites to making such a substitution under New Jersey law were complied with such that this court can conclude that New Jersey law would permit relation back of the March 26, 1993 amended complaint to the date of the original complaint filed in the Superior Court of New Jersey on or about April 14, 1992, and thus render timely the naming of Weddel as a John Doe defendant.

There is no dispute about plaintiffs' diligence in ascertaining, through the discovery procedure, the identity of Weddel. It has been explained to the court that any delay which might appear from the face of the pleadings resulted from the procedural posture of the case. Defendant A.C.T./Blue Star removed the case to federal court and then initiated numerous requests for extensions of time to respond to plaintiffs' discovery requests. (Plaintiffs' Letter Br. at 3.) I turn to an examination of whether plaintiffs have satisfied an additional prerequisite to the name substitution under New Jersey law—namely, the inclusion in the original complaint of a description of the party whose identity is not known at the time of filing the original pleading.

As stated, New Jersey Court Rule 4:26–4 requires that a fictitious name be accompanied by an "appropriate description sufficient to identify" the party. In *Viviano v. CBS, Inc.,* 101 N.J. 538, 503 A.2d 296 (1986), the Supreme Court of New Jersey considered, *inter alia,* whether the descriptive phrase "Defendant, JOHN DOE COMPANY, negligently, careless and recklessly designed, constructed, manufactured and tested the Record Press machine purchased and used by the Columbia Broadcasting System" was sufficient to permit amendment after the running of the statute to substitute the name of the manufacturer of a defective component part. The court found the description adequate, although it cautioned that in the future component part manufacturers must be specifically described as such, and the causes

of action against those entities must be stated. *Id.* at 554–55, 503 A.2d 296.

Subsequent to the issuance of the *Viviano* opinion, the New Jersey Appellate Division considered the amendment of a complaint which named as John Doe defendants "the designers of, manufacturer of, seller of, distributor of, repairer of, modifier and/or renovator of, or ... otherwise responsible for" the machine which caused plaintiff's injuries to name as defendants workers' compensation insurers who acted as safety inspectors. *Rutkowski v. Liberty Mutual Ins. Co.*, 209 N.J.Super. 140, 506 A.2d 1302 (1986). In that case, the court upheld the granting of summary judgment to the insurers who had been substituted for fictitious entities after the running of the statute of limitations. The *Rutkowski* court found that the language contained in the original complaint would not have put any insurer or safety inspector on notice of the claim alleged even though, as was the case in the situation before the court, at least one party sought to be named was involved in defending the suit in its capacity as insurer for a named defendant. Reviewing the Supreme Court's decision in *Viviano*, the Appellate Division determined that, faced with the requirement of Court Rule 4:26–4 that the fictitious name designation have appended to it "an appropriate description sufficient to identify" the defendant, "[e]ven applying the liberal construction of *Viviano*, we are constrained to say that the designation here applied, one 'otherwise responsible,' was insufficient to satisfy this provision." *Id.* at 146–47, 506 A.2d 1302. The court's decision was bolstered by its belief that Rule 4:26–4 should not, as a matter of policy, be permitted to completely eviscerate the statute of limitations, noting:

> [t]o permit such a general description of the fictitious defendant as the one before us (one "otherwise responsible"), would emasculate even our liberal pleading rules.... A plaintiff could file a complaint on the last day before the statute of limitations would run alleging merely that he was injured in a particular situation and

that 'John Doe(s) were negligent and responsible for plaintiff's loss.' He later could amend to include both the defendants' names and the bases of responsibility. We realize that with a long enough list of bases for liability, the 'John Doe' practice can now approximate this result, but we cannot permit the complete frustration of the principle that a complaint must generally state the facts showing that the pleader is entitled to relief.

*Rutkowski*, 209 N.J.Super. at 147, 506 A.2d 1302 (citations omitted).

Similarly, in *Lawrence v. Bauer Publishing & Printing Ltd.*, 78 N.J. 371, 396 A.2d 569 (1979), the Supreme Court reinstated the trial court's finding that plaintiff's claim against a newly identified John Doe defendant was time-barred. Plaintiff's complaint in a libel action had named a John Doe who was described as a newspaper employee who was "the composer and writer" of the headline for the allegedly libelous story.[7] Plaintiff's attempt to thereafter name a certain public official as the article's source was rejected because the late-named defendant was not a newspaper employee lying within the John Doe designation. *See* 78 N.J. at 371–372, 396 A.2d 569, adopting reasoning of 154 N.J.Super. 271, 276, 381 A.2d 358 (App.Div. 1977) (dissenting opinion). Thus, to preserve the statute of limitations under Court Rule 4:26–4, the late-identified defendant must be an entity subsumed with specificity within the fictitious party designation. *See also Viviano*, 101 N.J. at 554–55, 503 A.2d 296 (discussing *Lawrence, supra* ).

Turning to the complaint before the court, present plaintiffs defined the "John Doe" defendants more adequately than the *Rutkowski* and *Lawrence* plaintiffs. The complaint reads in relevant part:

FIRST COUNT:

.        .        .        .        .

2. At the time and place aforesaid, the plaintiff, ROBERT BRYAN, was injured while unloading a trailer containing boxes

---

7. These background facts are reported in the trial court's opinion at 143 N.J.Super. 387, 389, 363 A.2d 357 (L.Div.1976), *rev'd*, 154 N.J.Super. 271, 381 A.2d 358 (App.Div.1977), *rev'd*, 78 N.J. 371, 396 A.2d 569 (1979).

of frozen beef that were negligently, carelessly and/or improperly stacked by the defendants, [A.C.T./BLUE STAR] and/or JOHN DOE(S) 1–5, a fictitious name currently used to designate unknown parties.

3. The defendants, [A.C.T./BLUE STAR] and/or JOHN DOE(S) 1–5, a fictitious name currently used to designate unknown parties, carelessly and/or negligently owned, controlled and/or failed to maintain properly said trailer in a reasonably safe condition, carelessly and/or negligently failed to inspect adequately said stacked trailer of goods at reasonable intervals to determine if same were in a reasonably safe condition resultant in plaintiff, ROBERT BRYAN, sustaining serious and permanent personal injuries from said improperly stacked boxes falling out of the aforesaid trailer.

.   .   .   .   .

## SECOND COUNT

.   .   .   .   .

3. As a proximate result of the negligence and carelessness of the defendants, [A.C.T./BLUE STAR], and/or JOHN DOE(S) 1–5, a fictitious name currently used to designate unknown parties, the plaintiff, ROSEMARY BRYAN, was and will be deprived of the services, earnings, comfort, society and/or consortium of her husband for a long period of time.

In contrast to the complaint at issue in *Rutkowski* and *Lawrence*, the instant complaint describes the John Doe defendants with sufficient accuracy to permit the naming, beyond the otherwise applicable statute of limitations period, of defendant Weddel. The complaint identifies the John Does as unknown parties who "negligently, carelessly and/or improperly stacked" the "trailer containing boxes of frozen beef." Compl. Count 1, ¶ 2. The Bill of Lading, attached as an exhibit to the Certification of Uwe Shultz submitted by defendant ACT/Blue Star, provides a basis for inferring that Weddel was a stacker of the frozen beef cartons at issue, stating that Weddel was the provider of "one

container" holding 636 cartons of frozen beef for shipment to Philadelphia from Wellington. It may very well be the case, as plaintiffs allege, that Weddel stacked the beef cartons in the ocean shipping container, causing Weddel to fit the description of a John Doe defendant in plaintiffs' complaint.[8]

In summary, plaintiffs properly utilized the fictitious name procedure to avoid the application of New Jersey's two year statute of limitations in this action. Plaintiffs were within their rights to employ this procedure in the state court, and Rule 15(c)(1) operates to permit plaintiffs to continue to rely on the liberal state procedure after removal of the case to federal court. Rule 15(c)(1) requires the court to look to the more liberal state law upon which plaintiffs proceeded to determine whether in fact the statute of limitations would be extended by operation of state law. Here, plaintiffs' amended complaint survives because plaintiffs sufficiently complied with N.J.Ct.R. 4:26–4 such that a state court would have permitted plaintiffs' amendment to substitute Weddel for a John Doe defendant and deemed it timely. The court therefore concludes that application of New Jersey limitations law saves plaintiffs' claims against Weddel. Accordingly, Weddel's motion to dismiss plaintiffs' claims against it on statute of limitations grounds will be denied.

### Conclusion

For the reasons stated herein, defendant Weddel's motion to dismiss the claims against it will be denied.

### ORDER

This matter having come before the court upon the motion of defendant, Weddel Crown, Ltd., pursuant to Fed.R.Civ.P. 12(b) to dismiss plaintiffs' complaint against it upon the grounds that the court lacks both personal and subject matter jurisdiction in this action and based upon the statute of limitations; and the court having considered the submissions of the parties; for the reasons stated in the Opinion of today's date;

---

8. This court expresses no view on the merits of plaintiffs' factual allegations regarding Weddel's allegedly negligent conduct, if any.

IT IS this 4th day of November, 1993 hereby ORDERED that defendant's motion to dismiss is **DENIED.**