**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1109-20

DOLORES YANEZ and
DOLORES YANEZ o/b/o
the estate of ANTONIO
YANEZ (individually),

      Plaintiffs-Appellants,

v.

PEDRO CORDERO, M.D.,
TRINITAS REGIONAL
MEDICAL CENTER,
SECURIAN FINANCIAL
GROUP, INC., and MINNESOTA
LIFE INSURANCE COMPANY,
CUNA MUTUAL GROUP,

      Defendants,

and

JEFFREY STIRLING, M.D.,

      Defendant-Respondent.

_____

Argued March 16, 2022 – Decided April 4, 2022

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, L-3459-18.

Anthony R. Fiore, Jr., argued the cause for appellant (Gage Fiore, LLC, attorneys; Anthony R. Fiore, Jr., on the briefs).

Michael R. Ricciardulli argued the cause for respondent (Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys; Michael R. Ricciardulli, of counsel and on the brief; Brion D. McGlinn, on the brief).

PER CURIAM

In this medical malpractice action, plaintiffs Dolores Yanez (Yanez) and the Estate of Antonio Yanez (collectively "plaintiffs") appeal from orders granting defendant Jeffrey Stirling, M.D. (Stirling) summary judgment on statute of limitations grounds and denying plaintiffs' motion for reconsideration. Plaintiffs argue the court erred by failing to: apply the discovery rule to find the complaint was timely filed; conduct a hearing to determine the proper trigger for the commencement of the limitations period; and find the complaint was timely filed through application of the fictitious defendant rule, R. 4:26-4. Unpersuaded, we affirm.

I.

In our review of the record before the trial court, we accept the facts and all reasonable inferences therefrom in the light most favorable to plaintiffs because they

are the parties against whom summary judgment was entered.[1]  Brill v. Guardian

Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Applying that standard, the summary

judgment record before the trial court established the following undisputed material

facts.

Yanez is decedent Antonio Yanez's (decedent) wife.  Decedent was

admitted to Trinitas Regional Medical Center (Trinitas) on October 13, 2016,

for an interventional radiology procedure.  According to Yanez, Pedro Cordero,

M.D., (Cordero) was decedent's vascular surgeon and decedent said Cordero

would perform the procedure at Trinitas.

Yanez was not with decedent when he was admitted to Trinitas because

she had to attend to an issue related to their son.  Yanez went to Trinitas after

decedent was admitted, and she later testified she saw many doctors, nurses, and

hospital staff, but she did not know Stirling's identity.  Yanez was in the

---

[1] In accordance with Rule 4:46-2, we glean the facts from Stirling's statement of material facts supporting the summary judgement motion, plaintiffs' response to Stirling's statement of material facts, and plaintiffs' counterstatement of material facts submitted in opposition to the motion.  Although we generally limit our de novo review of a summary judgment record to the facts set forth in statements submitted pursuant to Rule 4:46-2, we note that before the motion court and on appeal, the parties rely on facts set forth in Yanez's affidavits and in her deposition testimony.  We do so as well because Sterling does not object to plaintiffs' reliance on such facts for purposes of our de novo review and because Stirling is entitled to summary judgment as a matter of law even if we accept Yanez's version of the facts as related in her testimony and affidavits.

operating room during decedent's surgery and she observed the procedure, but she "did not know who the doctors or staff were." The surgical procedure was performed in two parts. Yanez spoke with Stirling during a break after the first part of the procedure and then again after the second part of the procedure. She did not know his identity at that time. On the day following the surgery, October 14, 2016, decedent passed away while in Trinitas.

Yanez also spoke with Cordero following the surgical procedure, but he did not indicate that another doctor performed the surgery. Within a week of decedent's death, Yanez received medical records from Trinitas. The records were later determined to be incomplete. The records did not identify who performed the surgical procedure, and they did not include an operative report identifying Stirling as the surgeon. According to Yanez, the records "all identified . . . Cordero" as decedent's physician.

Three months after decedent's death, in January 2017, plaintiffs' counsel requested decedent's medical records from Trinitas. Counsel received medical records in response to the request, but the records did not include an operative report or any record indicating Stirling was decedent's surgeon. A representative of plaintiffs' counsel's office was subsequently advised by the records

4

department at Trinitas that it did not have an operative report for decedent's surgery.

Almost two years after decedent's death, on October 9, 2018, plaintiffs filed a complaint asserting wrongful death medical malpractice, survivorship, and tort claims against Cordero, Trinitas, and fictitiously named John Doe defendants, including "physicians" who "provided medical care and treatment to" decedent in Trinitas.

On June 5, 2019, Cordero provided answers to plaintiffs' interrogatories stating he did not perform the surgical procedure and identifying Stirling as decedent's surgeon. Plaintiffs moved for leave to file an amended complaint adding Stirling as a defendant. Yanez claimed she was not aware Stirling performed the October 13, 2016 surgical procedure until Cordero provided his answers to interrogatories. The court granted plaintiffs' motion, and, on August 5, 2019, plaintiffs filed a second amended complaint naming Stirling as a defendant and asserting the wrongful death medical malpractice, survivorship, and tort claims against him for the first time. Stirling filed an answer to the second amended complaint asserting in part that plaintiffs' claims were time-barred under the applicable statutes of limitations.

A-1109-20

In February 2020, Trinitas supplied additional records to plaintiffs' counsel. For the first time, the records included an operative report indicating Stirling performed decedent's October 13, 2016 surgery.

Stirling moved for summary judgment, arguing plaintiffs' complaint should be dismissed because it was filed against him outside the two-year limitations period. More particularly, Stirling asserted the causes of action asserted in the second amended complaint accrued on October 14, 2016—the date of decedent's death—and the complaint against him was filed more than two years later on August 5, 2019. Plaintiffs opposed the motion, arguing the statute of limitations should be tolled under the discovery rule because Trinitas did not supply complete medical records identifying Stirling as the surgeon and they could not have reasonably ascertained they had a claim against Stirling until he was identified as the surgeon in Cordero's June 2019 answers to interrogatories. For the same reasons, plaintiffs also claimed the complaint against Stirling was timely filed under the fictitious defendant rule, R. 4:26-4.

After hearing argument, the court granted Stirling's motion. In a written statement of reasons, the court determined plaintiffs were not entitled to the benefit of either the discovery rule or the fictitious defendant rule, R. 4:26-4, because the medical records Yanez received within one week of decedent's death

referred to Stirling as a physician who provided care and treatment to decedent while he was in Trinitas. The court further noted Yanez observed Stirling perform the surgical procedure, spoke to Stirling about the surgical procedure, and knew he was not Cordero, with whom she was otherwise familiar when the procedure was performed.

The court found plaintiffs failed to demonstrate they exercised the due diligence required to ascertain Stirling's identity prior to the expiration of the limitations period. The court reasoned that plaintiffs' failure did not support tolling of the statute of limitations under the discovery rule, and, for the same reasons, did not support their reliance on the fictitious defendant rule, R. 4:26-4. The court also rejected plaintiffs' request for a Lopez[2] hearing, finding the evidence they proffered in support of their request for a hearing did not raise any factual issues pertinent to the disposition of defendant's claim the complaint should be dismissed on statute of limitations grounds.

Plaintiffs filed a motion for reconsideration, asserting the court erred by denying their request for a Lopez hearing. The court denied the motion, reaffirming its prior determination the evidence plaintiffs proffered in support of their hearing request did not raise an issue of fact as to whether plaintiffs

---

[2] Lopez v. Swyer, 62 N.J. 267 (1973).

7 A-1109-20

exercised the due diligence required to identify Stirling as a defendant such that plaintiffs might be entitled to a tolling of the statute of limitations under the discovery rule or the benefit of the fictitious defendant rule, R. 4:26-4.

Plaintiffs appeal from the court's orders granting Stirling summary judgment and denying their motion for reconsideration.

## II.

We conduct a de novo review of an order granting summary judgment, Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016), and apply the same standard as the trial court, State v. Perini Corp., 221 N.J. 412, 425 (2015). In considering a summary judgment motion, "both trial and appellate courts must view the facts in the light most favorable to the non-moving part[ies], which in this case [are] plaintiff[s]." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009) (first citing R. 4:46-2(c); and then citing Brill, 142 N.J. at 540). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)). A court's determination of "whether a cause of action is barred by a statute of limitations is a question of law that we review de novo." Save Camden Pub. Schs. v. Camden City Bd. of

Educ., 454 N.J. Super. 478, 487 (App. Div. 2018) (citing Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016)).

Plaintiffs' complaint against Stirling includes a wrongful death claim, a survivorship claim, and claims for emotional distress and loss of services. There a different statutes of limitations applicable to plaintiffs' claims. The wrongful death claim is governed by the two-year statute of limitations in N.J.S.A. 2A:31-3. See generally Presslaff v. Robins, 168 N.J. Super. 543, 546 (App. Div. 1979) (explaining the limitations period for wrongful death claims). The survivorship cause of action is governed by the two-year statute of limitations in N.J.S.A. 2A:15-3. See generally Warren v. Muenzen, 448 N.J. Super. 52, 64-69 (App. Div. 2016) (explaining the accrual date for, and running of, the limitations period for survivorship actions). Plaintiffs' remaining claims for emotional distress and loss of decedent's services are governed by the two-year statute of limitations in N.J.S.A. 2A:14-2.

Plaintiffs' complaint against Stirling was filed on August 5, 2019, almost three years after decedent's October 14, 2016 death. They argue the court erred by finding the claims against Stirling are time-barred because the limitations

9

periods were tolled under the discovery rule.[3]  More particularly, plaintiffs argue the statute of limitations periods on their claims against Stirling did not begin to run until they first learned in June 2019 that Stirling was decedent's surgeon. They claim that since they filed their complaint against Stirling within two years of first learning Stirling was decedent's surgeon, the complaint against him was timely filed.

We first note the discovery rule is inapplicable to plaintiffs' wrongful death cause of action because N.J.S.A. 2A:13-3 requires the filing of a cause of action within two years of decedent's death.  See Presslaff, 168 N.J. Super. at 546 (holding the discovery rule does not apply to Wrongful Death Act claims).  The motion court therefore properly rejected plaintiffs' reliance on the discovery rule in granting summary judgment on their wrongful death claim against Stirling because the complaint against him was filed more than two years following decedent's death.[4] Ibid.

---

[3]  In making their arguments on appeal, plaintiffs refer only to the two-year statute of limitations in N.J.S.A. 2A:14-2.  As noted, however, their claims are governed by different statutes of limitations and, although each statute includes a two-year limitations period, it is necessary to distinguish them because they are not identical in all respects.

[4]  We recognize the motion court rejected plaintiffs' reliance on the discovery rule as to the wrongful death claim on grounds different than those upon which

A-1109-20

The discovery rule is applicable to plaintiffs' survivorship claim.  See Warren, 448 N.J. Super at 64-69 (explaining the two-year limitations period in N.J.S.A. 2A:15-3, which governs the limitations period for survivorship actions, is two years from the date of injury or its discovery consistent with N.J.S.A. 2A:14-2, as may be extended by N.J.S.A. 2A:14-23.1).  The discovery rule is also applicable to plaintiffs' tort claims under N.J.S.A. 2A:14-2.

The common law discovery rule, first articulated in the medical malpractice context in Fernandi v. Strully, 35 N.J. 434 (1961), is a rule of equity that defers a cause of action's accrual date to the date the plaintiff knew or was chargeable with knowing an injury has occurred and the injury is the fault of another.  See Lopez, 62 N.J. at 273-74.  It "was developed as a means of mitigating the harsh results which flow from a rigid adherence to a strict rule of law."  Heyert v. Taddese, 431 N.J. Super. 388, 435 (App. Div. 2013) (citing Lopez, 62 N.J. at 273-74).

"Whether the discovery rule applies depends on 'whether the facts presented would alert a reasonable person, exercising ordinary diligence that he or she was injured due to the fault of another.'"  Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J.

---

we rely.  Our difference with the court's reasoning is of no moment.  We conduct a de novo review of its summary judgment order, Globe Motor Co, 225 N.J. at 479, and we review the order and not the court's reasoning, Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001).

123, 134 (2017) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)). Under the discovery rule, the running of the statute of limitations begins when the plaintiff is aware "through the exercise of reasonable diligence, the facts that form the basis for an actionable claim against an identifiable defendant." The Palisades at Ft. Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 435 (2017) (citing Caravaggio, 166 N.J. at 246). "The standard is basically an objective one – whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Elazar, 230 N.J. at 134 (quoting Caravaggio, 166 N.J. at 246). "[L]egal and medical certainty are not required for a claim to accrue." Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 193 (2012).

A plaintiff seeking application of the discovery rule bears the burden of showing "that a reasonable person in her [or his] circumstances would not have been aware[,] within the prescribed statutory period[,] that she [or he] had been injured by [the] defendant[']s" conduct. Kendall, 209 N.J. at 197-98. Plaintiffs failed to sustain that burden here.

Plaintiffs contend Yanez was unable to identify Stirling as a possible tortfeasor because the incomplete Trinitas medical records she received during the two-year period following decedent's death did not reveal Stirling was decedent's surgeon. Plaintiffs argue Yanez first learned Stirling was the surgeon

in June 2019, when Cordero identified Stirling as the surgeon in his answers to interrogatories, and, therefore, their claims against Stirling did not accrue until that time.

Plaintiffs' argument ignores the medical records provided by Trinitas within one week of decedent's death identify Stirling four separate times as a physician who provided care to decedent during the short time he was in the hospital prior to his death. In a report dated October 13, 2016, the date of decedent's surgery, Stirling is identified as decedent's "attending" physician. Two other reports, from that same day, are electronically signed by Stirling and include his assessments of post-surgical changes in catheters and support devices and other information concerning decedent's care and treatment.

The nurses' notes included in the Trinitas records also identify a "Dr. Sterling" as a physician who provided care for decedent. The October 13, 2016 nurses' notes refer to "Dr. Sterling" twice. The state Dr. Sterling was at decedent's bedside and reviewed a CT scan, and they separately state Dr. "Sterling" "advised [the] surgery [department] to transfuse [the] patient regar[d]less." The record does not include evidence plaintiffs attempted to identify the "Dr. Sterling" referred to in the nurses' notes or to determine if the "Dr. Sterling" to which reference is made was the surgeon, the same individual

13

referenced elsewhere in the records as Stirling, or someone else who provided care to decedent.

In any event, the Trinitas records establish that, although plaintiffs were not immediately provided an operative report identifying Stirling as decedent's surgeon, within one week of decedent's death plaintiffs had reason to know Stirling was a physician—an "attending physician"—who provided care and treatment to decedent. In addition, the nurses' notes clearly indicated that a Dr. Sterling provided care and treatment to decedent related to the surgical procedure. In February 2017, Trinitas provided the medical records to plaintiffs' counsel, and although the records lacked an operative report, they identified Stirling as a physician who provided care and treatment to decedent, and a separate Dr. Sterling as physician who provided care and treatment to decedent, during his tragically short hospital stay at Trinitas.[5]

---

[5] We observe that plaintiffs' timely filed 2018 initial complaint, and 2019 second amended complaint which asserted claims against Stirling for the first time, do not expressly allege malpractice during the performance of the surgical procedure. The complaints more generally allege negligence in the care and treatment of decedent during his October 13 and 14, 2016 admission to Trinitas. Thus, the medical records plaintiffs received shortly after decedent's death and their counsel received from Trinitas three months later indicate Stirling was involved in the care and treatment of decedent the complaints alleged were negligently provided. As such, within a week of decedent's death, plaintiffs had medical records identifying Stirling as a provider of care and treatment the

Moreover, Yanez testified she watched decedent's surgery and spoke to Stirling initially after the first part of the surgery and again after the second part of the surgery. She did not know Stirling's name at that time. However, following the surgery she also spoke with Cordero, with whom she was familiar, about the surgery. Thus, Yanez knew on the day of the surgery that the doctor who performed the procedure, with whom she spoke twice, was not Cordero. She also knew Cordero was not the surgeon because she watched the surgery and spoke to the surgeon whose name was not known to her at the time.

Given those circumstances, we reject plaintiffs' claim they are entitled to the benefit of the discovery rule because Yanez could not have known Cordero was not the surgeon until he answered interrogatories in June 2019, identifying Stirling as the surgeon. Yanez's testimony confirms she knew Cordero was not the surgeon because he was familiar to her and she observed a different doctor, whose name she did not know, perform the surgery, and she to the surgeon twice—once during and once after the procedure.

timely filed initial complaint alleged was negligently provided, but plaintiffs did not name Stirling as a defendant until almost three years after first receiving the records. Additionally, and as noted, the nurses' notes also referred to a Dr. Sterling as having provided care and treatment to decedent and there is no evidence in the record plaintiffs made any effort to determine the identity of that doctor or to determine, as is likely, that the Dr. Sterling referred to in the nurses' notes is actually Sterling.

15

Yanez admitted she did not know the name of the surgeon, and the medical records provided by Trinitas to plaintiffs and their counsel long before the statute of limitations expired in October 2018 did not identify the surgeon. The records were not misleading. They did not incorrectly identify the surgeon or indicate Cordero was the surgeon. Yet, despite the lack of any identification of the surgeon in the medical records, the references to Stirling and doctors other than Cordero in the records,[6] Yanez's observation of a doctor performing the surgery who she knew was not Cordero, and Yanez's admitted inability to identify the surgeon by name, plaintiffs do not present any evidence of any direct effort to ascertain the surgeon's identity prior to the expiration of the two-year statute of limitations.

Plaintiffs argue their counsel requested an operative report from Trinitas and was advised one did not exist, only to later obtain during discovery an operative report identifying Stirling as the surgeon. Plaintiffs' reliance on the requests for the operative report, and the late delivery of it to their counsel, does not explain or excuse the lack of any other effort to ascertain the identity of the surgeon who performed the procedure prior to the expiration of the limitations

---

[6] The medical records identify other physicians who provided care and treatment to decedent on October 13 and 14, 2016, including "Dr. Sterling."

period. Again, Yanez testified she not know the identity of the surgeon whose malpractice plaintiffs allege caused, or contributed to cause, decedent's death. The absence of an operative report providing the surgeon's identity should have provided an impetus to diligently look elsewhere so the surgeon could be identified and timely named as a defendant.

The discovery rule delays the accrual of a cause of action "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." R.L. v. Voytac, 199 N.J. 285, 299 (2009) (quoting Lopez, 62 N.J. at 272). Where "a plaintiff knows of an injury and that the injury it due to the fault of another, he or she has a duty to act." Caravaggio, 166 N.J. at 249-50.

Here, there is no evidence plaintiffs acted diligently to ascertain Stirling's name prior to the expiration of the limitations periods in the statutes of limitations applicable to their claims. As the motion court aptly observed, Yanez could have easily asked Cordero for the surgeon's name either on the day of surgery or during a follow up inquiry prior to the expiration of the limitations period. As our Supreme Court has explained,

> When a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the

17

> pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action.
>
> [Kendall, 209 N.J. at 191 (quoting Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973)).]

For those reasons, we are convinced the motion court correctly concluded that in the absence of any evidence of a diligent effort to identify Stirling, the discovery rule did not delay the accrual of plaintiffs' survivorship and tort claims such as to render the August 2019 complaint against Stirling timely.

Plaintiff also contends her initial complaint, which was filed within two years of the alleged malpractice and decedent's death, should be deemed timely as to Stirling under the fictitious defendant rule, R. 4:26-4. In pertinent part, the Rule provides:

> In any action . . . if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name[.]
>
> [R. 4:26-4.]

The Rule allows "a plaintiff who institutes a timely action against a fictious defendant to amend the complaint after the expiration of the statute of limitations to identify the true defendant." Viviano v. CBS, Inc., 101 N.J. 538,

548 (1986). When the procedure available under the Rule is "properly utilized, 'an amended complaint identifying the defendant by its true name <u>relates</u> <u>back</u> to the time of the filing of the original complaint.'" <u>Baez v. Paulo</u>, 453 N.J. Super. 422, 437 (App. Div. 2018) (emphasis in original) (quoting <u>Viviano</u>, 101 N.J. at 548).

The fictitious party rule "may only be used by a plaintiff 'if a defendant's true name cannot be ascertained by the exercise of due diligence prior to filing the complaint.'" <u>Id.</u> at 438 (quoting <u>Claypotch v. Heller, Inc.</u>, 360 N.J. Super. 472, 479-80 (App. Div. 2003)). As we explained in <u>Baez</u>, a plaintiff "must demonstrate two phases of due diligence in order to gain the tolling benefits of the rule." <u>Id</u>. at 439. A plaintiff must first demonstrate they "exercise[d] due diligence in endeavoring to identify the responsible defendant[] before filing the original complaint naming John Doe parties." <u>Ibid.</u> A plaintiff must also demonstrate they "act[ed] with due diligence in taking prompt steps to substitute the defendant's true name, after become aware of that defendant's identity." <u>Ibid.</u>

Here, for the reasons we have explained, plaintiffs have not demonstrated they exercised due diligence in endeavoring to identify Stirling prior to the filing of the initial complaint. Again, the record lacks evidence plaintiffs made any effort to ascertain Stirling's name prior to the filing of the complaint even though

Yanez knew Cordero did not perform the surgical procedure, Yanez knew a doctor other than Cordero performed the procedure, and Stirling was mentioned four different times in the medical records that were first provided to Yanez one week after decedent's death and provided three months later to plaintiffs' counsel.

Plaintiffs simply present no evidence they exercised due diligence to ascertain the identity of the surgeon who performed the procedure prior to the filing of the initial complaint. They stand in the same shoes as the plaintiff in Matynska v. Fried, who asserted a medical malpractice claim, following a surgical procedure, against various identified doctors and nurses, as well as fictitiously named defendant doctors. 175 N.J. 51, 52 (2002). One of the doctors who treated the plaintiff following the surgery was identified twice in the medical records as having provided care to the plaintiff, but the doctor was not named as a defendant in the original complaint. Ibid.

The Supreme Court affirmed the trial court's denial of the plaintiff's motion to amend the complaint to substitute the unnamed doctor as one of the fictitiously named defendants under Rule 4:26-4. Id. at 53. The Court explained the plaintiff's "efforts to discover the role of all parties complicit in her injury were wholly inadequate at least insofar as" that doctor was concerned. Ibid.

20

The Court noted the hospital records included the doctor's name and indicated the doctor provided care to the plaintiff. Ibid. The Court also observed that a review of a telephone book, a call to another doctor, or a call to the hospital would have revealed the doctor's status and therefore would have alerted plaintiff of the doctor's role in providing the care at issue. Ibid.

The Court concluded the plaintiff was not entitled to the benefit of the fictitious party rule, R. 4:26-4. Ibid. The Court reasoned the plaintiff did not "cross the due diligence threshold" because she failed "to investigate all potentially responsible parties in a timely manner," and she did not fulfill her "primary obligation to investigate" the role of the defendant, whose name appeared in the medical records. Ibid.

The same is true here. Stirling's name appeared four times in the medical records provided within a week of decedent's death. In one instance, Dr. Stirling is identified in the records as decedent's "attending physician." Yet, plaintiffs took no action to ascertain his precise role in providing care to decedent—or to determine if he was the surgeon whose identity Yanez admitted was not known to her—at any time prior to the filing of the initial complaint. We therefore conclude, as the Court did in Matynska, that plaintiffs' failure to demonstrate due diligence to ascertain the identity of the surgeon, and Stirling's role in the

21

care and treatment of decedent based on his name appearing the medical records, requires rejection of plaintiffs' reliance on Rule 4:26-4.

We also find no merit in plaintiffs' argument the court erred by denying their request for a Lopez hearing to determine the accrual date of their causes of action under the discovery rule. A Lopez hearing provides an opportunity for the "equitable claims of opposing parties [to] be identified, evaluated and weighed" by the trial court before determining the date upon which a plaintiff became aware of the facts giving rise to the cause of action. Lopez, 62 N.J. at 274. "The burden of proof will rest upon the party claiming the indulgence of the rule." Id. at 276.

"A plaintiff who invokes the discovery rule is not always entitled to a hearing. 'A Lopez hearing is only required when the facts concerning the date of the discovery are in dispute.'" J.P. v. Smith, 444 N.J. Super. 507, 528 (App. Div. 2016) (quoting Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 336 n.6 (2010)). Where "the record . . . unquestionably establishes [a] plaintiff's awareness of the essential facts, no formal hearing [is] necessary to resolve the discovery rule issue." Lapka v. Porter Hayden Co., 162 N.J. 545, 558 (2000).

Plaintiffs' claim they are entitled to a Lopez hearing is founded on their intention to present four witnesses (Yanez, plaintiffs' malpractice expert Dr.

A-1109-20

Benjamin Jackson, plaintiffs' counsel, and Valdary Campos, a Trinitas employee). The court reviewed the proffered testimony of Yanez, Dr. Jackson, and plaintiffs' counsel, and concluded the proffer did not offer any facts pertinent to the delay in plaintiffs' identification of Stirling that did not exist in the summary judgment record. Moreover, plaintiffs do not proffer any putative evidence Campos might provide at a hearing that would support plaintiffs' reliance on the discovery rule. The court also found the summary judgment record established all the facts upon which plaintiffs relied in support their discovery rule argument, and plaintiff failed to demonstrate the proffered testimony was pertinent to determination of the accrual date of the asserted causes of action.

Based on our careful review of the record, we discern no abuse of discretion in the court's assessment of the proffered testimony and determination a <u>Lopez</u> hearing was unnecessary. <u>See</u> <u>Lopez</u>, 62 N.J. at 275 (explaining a trial court's decision to conduct a hearing on the accrual date of a cause of action under the discovery rule is reviewed for an abuse of discretion). Plaintiffs fail to make any showing the court's decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis. <u>Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment</u>, 440

23

N.J. Super. 378, 382 (App. Div. 2015) (explaining the abuse-of-discretion standard of review of trial court decisions). We therefore affirm the court's denial of plaintiffs' request for a <u>Lopez</u> hearing. For the same reasons, we affirm the court's denial of plaintiffs' motion for reconsideration of the order denying their request for the <u>Lopez</u> hearing.

Plaintiffs' remaining arguments that we have not directly addressed are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1109-20